UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
DENVER DIVISION

| | |
|---|---|
| TIMOTHY WARREN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>MBI ENERGY SERVICES, INC.; MISSOURI BASIN WELL SERVICE, INC. d/b/a MBI ENERGY; and HIGH PLAINS INC.,<br><br>Defendants. | No: 1:19-cv-800<br><br><br><br>CLASS AND COLLECTIVE ACTION COMPLAINT |

## SUMMARY

1. This lawsuit seeks to recover overtime compensation for Plaintiff and his similarly situated co-workers – salaried wireline engineers and all other similar workers (together, "Wireline Engineers") - who work or have worked for MBI Energy Services, Inc., Missouri Basin Well Service, Inc., and High Plains Inc. (collectively, "MBI Energy") in the United States.

2. Established in North Dakota in 1979, MBI Energy has grown to a $600 million company and is a leader in completion and well intervention and water management and logistics.[1] In this regard, MBI has established its presence in the Williston Basin in North Dakota and the Rocky Mountain region, and has further expanded to offer services in the

---

[1] *See* "MBI Energy Services," Energy & Mining International (*available at http://www.emi-magazine.com/sections/profiles/585-mbi-energy*).

Eagle Ford play in Texas, the Marcellus play in Pennsylvania, and the Niobrara play in Wyoming.[2] Moreover, as explained by MBI Energy CEO Jim Arthaud in Energy & Mining International Magazine, MBI Energy's workforce has grown from 200 to "more than 1,600 employees" in recent years.[3] In May 2018, global investment firm Cerberus Capital Management acquired MBI Energy to continue its expansion in to the oilfield services market.[4]

3. MBI has made several significant and strategic acquisitions to position itself as a broad-based oilfield services company, including, among other services, wireline units. In this regard, MBI acquired High Plains, Inc. in 2011, and officially merged High Plains, Inc. with MBI Energy in June 2016, to increase its well completion and wireline services.[5]

4. Headquartered in Belfield, North Dakota, MBI Energy services the greater Williston Basin and the Rocky Mountain regions, maintaining locations in Williston, North Dakota; Dickinson, North Dakota; Casper, Wyoming; Gillette, Wyoming; Longmont, Colorado; and Denver, Colorado.[6]

---

[2] *See id.*

[3] *Id.*

[4] *See* "Cerberus Acquires MBI Energy Services," MBI Website (available at http://mbienergyservices.com/news/cerberus-acquires-mbi-energy-servies/).

[5] *See Wilkinson v. High Plains, Inc. et al.*, No. 16 Civ. 00011 (DLH)(CSM), ECF No. 49 ¶¶ 5-6 (D. N.D. March 31, 2017) (declaration of Troy Ohlhausen).

[6] *See Wilkinson v. High Plains, Inc. et al.*, No. 16 Civ. 00011 (DLH)(CSM), ECF No. 49 ¶ 8 (D. N.D. March 31, 2017) (declaration of Troy Ohlhausen); *see* Completions and Well Intervention: Cased-Hole Wireline, MBI Energy Website (available at http://mbienergyservices.com/services/completions-and-well-intervention/cased-hole-wireline/).

5. In order to offer its completion services, MBI Energy employs several hundreds of oilfield workers throughout the United States, including oilfield workers to support its cased-hole wireline division for completions and well intervention services it offers its clients.

6. Plaintiff and similarly situated Wireline Engineers work on the oil well sites and typically work at least 12-hour shifts, 7 days a week, for weeks at a time, all while in some of the harshest working conditions.

7. In order to avoid paying Wireline Engineers overtime for hours worked in excess of 40 per workweek, Defendants uniformly misclassified them as exempt from the overtime provisions of the Fair Labor Standards Act § 201 *et seq.* ("FLSA") and corresponding state wage and hour laws.

8. Despite this classification, Plaintiff and similarly situated Wireline Engineers have non-exempt primary duties.

9. In this regard, Wireline Engineers have non-exempt primary duties that involve operating a wireline truck's winch, lowering tools down wells, setting wireline plugs, setting lines in the well site, rigging up and rigging down well sites, and completing route client/company checklists. Moreover, Wireline Engineers cannot hire or fire employees, nor are they involved in the interview process.

10. As such, Wireline Engineers are non-exempt employees under the FLSA and corresponding state wage and hour laws.

11. Plaintiff brings this action on behalf of himself and similarly situated current and former Wireline Engineers who elect to opt-in to this action pursuant to the FLSA, and

3

specifically, the collective action provision of 29 U.S.C. § 216(b) to remedy violations of the wage-and-hour provisions of the FLSA by MBI Energy that have deprived Plaintiff and similarly situated employees of their lawfully earned wages.

12. Plaintiff also brings this action on behalf of himself and similarly situated Salaried Workers in Colorado pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the Colorado Wage Claim Act, Colo. Rev. Stat. §§ 8-4-101, *et seq.* and Colorado Minimum Wage Order Number 34, 7 CCR 1130-1 (together "Colorado Wage Laws").

13. Plaintiff also brings this action on behalf of himself and similarly situated Salaried Workers in North Dakota pursuant to Rule 23 remedy violations of North Dakota Admin. Code § 46-02-07-02(4) ("North Dakota Wage Law").

## JURISDICTION AND VENUE

14. This Court has original jurisdiction under 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331(a), 1332(a), and/or pursuant to 28 U.S.C. § 1367.

15. The proposed collective action includes a total number of plaintiffs in excess of 100.

16. Venue is proper in the District of Colorado, Denver Division, because Defendants perform business in this District and Plaintiff performed work in this District.

## PARTIES

17. Tim Warren ("Warren") is an adult individual who is currently resident of the State of Wyoming.

18. Warren was employed by MBI Energy as a Wireline Engineer from approximately March 2014 through January 2018.

19. At all relevant times, Warren was an "employee" of MBI Energy as defined by the FLSA, Colorado Wage Law, and North Dakota Wage Law.

20. At all relevant times, MBI Energy was Warren's "employer" as defined in the FLSA, Colorado Wage Law, and North Dakota Wage Law.

21. A written consent form for Warren is being filed with this Class and Collective Action Complaint.

## DEFENDANTS

22. Defendants jointly employed Plaintiff and similarly situated employees at all times relevant.

23. Each Defendant has had substantial control over Plaintiff's working conditions, and over the unlawful policies and practices alleged herein.

24. Defendants are part of a single integrated enterprise that has jointly employed Plaintiff and similarly situated employees at all times relevant.

25. During all relevant times, Defendants' operations are interrelated and unified.

26. During all relevant times, Defendants have been Plaintiff's employers within the meaning of the FLSA, Colorado Wage Laws, and North Dakota Wage Laws.

**MBI Energy Services, Inc.**

27. Together with the other Defendants, MBI Energy Services, Inc. has co-owned and/or co-operated all MBI Energy corporations and work sites throughout the United States during the relevant time period.

28. MBI Energy Services, Inc. is a foreign business corporation organized and existing under the laws of North Dakota.

29. The corporate headquarters for MBI Energy Services, Inc. is 12980 35th Street S.W., P.O. Box 458, Belfield, North Dakota 58622.

30. MBI Energy Services, Inc. has admitted to being the parent corporation for other MBI Energy-related corporations, such as Missouri Basin Well Service, Inc., High Plains, Inc., and MBI Energy Logistics, Inc. in Rule 7.1 corporate disclosure statements in past litigation.[7]

31. At all relevant times, MBI Energy Services, Inc. has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

32. During his employment, Plaintiff received paystubs that list MBI Energy Services as the corporate payor.

33. MBI Energy Services, Inc. has applied the same employment policies, practices, and procedures to all Wireline Engineers at their worksites throughout the United States.

---

[7] *See Wilkinson v. High Plains, Inc. et al.*, No. 16 Civ. 00011 (DLH)(CSM), ECF No. 6 (D. N.D. March 2, 2016); *Yanish et al. v. MBI Energy Logistics, LLC*, No. 18 Civ. 00086 (DLH)(CSM), ECF No. 9 (D. N.D. June 14, 2018).

34. At all times relevant, MBI Energy Services, Inc. has had an annual gross volume of sales in excess of $500,000.00.

**Missouri Basin Well Service, Inc.**

35. Together with the other Defendants, Missouri Basin Well Service, Inc. ("Missouri Basin Well Service") has co-owned and/or co-operated all MBI Energy corporations and work sites throughout the United States during the relevant time period.

36. Missouri Basin Well Service is a domestic business corporation organized and existing under the laws of North Dakota.

37. Missouri Basin Well Service lists its corporate headquarters as 12980 35th Street S.W., P.O. Box 458, Belfield, North Dakota 58622 in North Dakota's Secretary of State records.

38. Missouri Basin Well Service has admitted to being the parent corporation of High Plains, Inc. in a previously filed Rule 7.1 Corporate Disclosure Statement.[8] Moreover, Missouri Basin Well Service is listed as the owner of the trade name "MBI Energy Services" in North Dakota's Secretary of State records.

39. At all relevant times, Missouri Basin Well Service has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

---

[8] *See Wilkinson v. High Plains, Inc. et al.*, No. 16 Civ. 00011 (DLH)(CSM), ECF No. 6 (D. N.D. March 2, 2016).

7

40. Missouri Basin Well Service applies the same employment policies, practices, and procedures to all Wireline Engineers at their worksites throughout the United States.

41. At all times relevant, Missouri Basin Well Service has had an annual gross volume of sales in excess of $500,000.00.

**High Plains, Inc.**

42. Together with the other Defendants, High Plains, Inc. ("High Plains") has co-owned and/or co-operated all MBI Energy work sites throughout the United States during the relevant time period.

43. According to North Dakota Secretary of State records, High Plains, Inc. is a trade name currently registered to Missouri Basin Well Service, 12980 35th Street SW, P.O. Box 458, Belfield, North Dakota 58622.

44. Based on information and belief, Plaintiff received paystubs that listed High Plains, Inc. as the corporate payor during his employment with Defendants.

45. In approximately 2011, High Plains, Inc. was acquired by Missouri Basin Well Service, and in June 2016, Missouri Basin Well Service merged with High Plains, Inc.

46. At all relevant times, High Plains, Inc. has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

47. High Plains, Inc. applies the same employment policies, practices, and procedures to all Wireline Engineers at their jobsites throughout the United States.

8

48. At all times relevant, High Plains, Inc. has had an annual gross volume of sales in excess of $500,000.00.

**FACTS**

49. Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiff, individually, as follows:

**Tim Warren**

50. Warren was employed by MBI Energy as a Wireline Engineer from approximately March 2014 through January 2018. During this time, Warren was generally assigned to MBI Energy's territories surrounding Casper, Wyoming; Dickenson, North Dakota; and Greeley, Colorado. Warren also performed work for MBI Energy in other states, such as South Dakota, Montana, and Utah.

51. During the course of his employment, Warren regularly worked over 40 hours per week. In this regard, Warren was assigned to job shifts at least 12 hours in length for 14 days at a time.

52. During his employment, Warren was subject to several workweek schedules. Specifically, from the start of his employment to approximately November 2014, Warren generally worked 7 days per week, with only about 3 or 4 days off per month. Beginning in November 2014, Warren was assigned a variety of "hitches,"[9] ranging from 14 days on with 7 days off ("14/7"), 15 days on with 6 days off ("15/6"), and 20 days on with 10 days off

---

[9] A hitch is a length of continuous employment followed by a set amount of days off.

9

("20/10"). Beginning in approximately November 2015, MBI Energy required Warren to work 7 days per week with sporadic days off, as MBI required him and other Wireline Engineers were required to use vacation days for any days off. Beginning in April 2017 to the end of his employment, Warren worked a "20/10" schedule. As a result of the above, Warren consistently worked over 40 hours per week.

53. Despite regularly working over 40 hours per workweek, Defendants paid Warren with a salary and job bonus, regardless of the number of hours worked.

54. Warren's primary duties as a Wireline Engineer are related to the operating and monitoring of wireline operations. In this regard, his primary duties as a Wireline Engineer were manual in nature, were the type of work MBI Energy performs for its customers, and consisted of traveling to and from well sites, operating the wireline truck's winch, helping wireline operators set up lines, rigging up and rigging down job sites, and completing routine client/company checklists.

55. Warren was required to perform his job in strict compliance with Defendants' company policies. Defendants prohibit their employees from varying outside of the predetermined job duties and checklists.

56. Warren, as with the other non-exempt workers at a job site, was required to wear personal protective equipment ("PPE"), as his job is dangerous and constantly exposed him to various hazards, such as chemicals, sharp objects, and volatile working conditions. In addition, Warren, as with other non-exempt workers, is required to work throughout all weather conditions.

57. Warren did not have the authority to hire or fire employees.

58. As such, Warren's primary job duties are non-exempt duties under the FLSA, North Dakota Wage Law, and Colorado Wage Law.

59. Upon information and belief, Defendants did not keep accurate records of hours worked by Warren and similarly situated employees.

## COLLECTIVE/CLASS ALLEGATIONS

60. Plaintiff bring the First Cause of Action, a FLSA claim, on behalf of himself and all similarly situated persons who work or have worked for MBI Energy as Wireline Engineers and other similar titles nationwide who elect to opt-in to this action (the "FLSA Collective").

61. Plaintiff brings the Second Cause of Action, an overtime claim under Colorado Wage Laws on behalf of himself and all similarly situated persons who have worked as Wireline Engineers and other similar titles for MBI Energy in Colorado (the "Colorado Class") (together, with the FLSA Collective and North Dakota Class, "Class Members").

62. Plaintiff brings the Third Cause of Action, an overtime claim under North Dakota Wage Law, on behalf of himself and all similarly situated persons who have worked as Wireline Engineers and other similar titles for MBI Energy in North Dakota (the "North Dakota Class").

63. Defendants are liable under the FLSA, Colorado Wage Laws, and North Dakota Wage Laws, for, *inters alia*, failing to properly compensate Plaintiff and Class Members.

64. Consistent with Defendants' policies and patterns or practices, Plaintiff and the Class Members were not paid the proper premium overtime compensation when they worked beyond 40 hours in a workweek.

65. All of the work that Plaintiff and the Class Members have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and the Class Members have performed.

66. As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA, Colorado Wage Laws, and North Dakota Wage Law, and with respect to Plaintiff and the Class Members. This policy and pattern or practice includes, but is not limited to:

   a. willfully failing to pay its employees, including Plaintiff and Class Members, premium overtime wages for hours that they worked in excess of 40 hours per workweek; and

   b. willfully failing to record all of the time that their employees, including Plaintiff and the Class Members, have worked for the benefit of Defendants.

67. Defendants' unlawful conduct, as described in this Complaint, is pursuant to a corporate policy or practice of minimizing labor costs by misclassifying employees.

68. Defendants are aware or should have been aware that federal and state law required them to pay Plaintiff and the Class Members overtime premiums for all hours worked in excess of 40 per workweek.

69. Plaintiff and the Class Members perform or performed the same primary duties.

70. There are many similarly situated current and former Wireline Engineers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

71. Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Overtime Wages
### (Brought on behalf of Plaintiff and the FLSA Collective)

72. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

73. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff and the members of FLSA Collective.

74. Defendants failed to pay Plaintiff and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times their regular rate of pay, which includes all total earnings per workweek, for all hours worked beyond 40 per workweek.

75. Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Class Action Complaint were unlawful. Defendants did not make a good faith effort to

comply with the FLSA with respect to the compensation of Plaintiff and the FLSA Collective. As such, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

76. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

### SECOND CAUSE OF ACTION
### Colorado Wage Law – Overtime Wages
### (Brought on Behalf of Plaintiff and the Colorado Class)

77. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

78. At all times relevant, Defendants have been an "employer" within the meaning of the Colorado Wage Laws – Colo. Rev. Stat. §§ 8-4-101, *et seq.* and 7 CCR 1130-1.

79. At all times relevant, Plaintiff and the Colorado Class have been "employees" of Defendants within the meaning of the Colorado Wage Laws - Colo. Rev. Stat. §§ 8-4-101, *et seq.* and 7 CCR 1130-1.

80. Defendants failed to pay Plaintiff and the Colorado Class the premium overtime wages to which they were entitled under Colo. Rev. Stat. §§ 8-4-101, *et seq.* and 7 CCR 1130-1 – at a rate of 1.5 times their regular rate of pay – for all hours worked beyond 40 per workweek.

81. Through their knowing or intentional failure to pay Plaintiff and the Colorado Class the appropriate overtime wages for hours worked in excess of 40 hours per workweek,

14

Defendants willfully violated the Colorado Wage Laws - Colo. Rev. Stat. §§ 8-4-101, *et seq*. and 7 CCR 1130-1.

82. Due to Defendants' willful violations of the Colorado Wage Laws, Plaintiff and the Colorado Class are entitled to recover from Defendants their unpaid overtime wages, applicable penalties, and reasonable attorneys' fees and costs pursuant to Colo. Rev. Stat. §§ 8-4-101, *et seq*. and 7 CCR 1130-1.

### THIRD CAUSE OF ACTION
### North Dakota Wage Laws – Overtime Wages
### (Brought on Behalf of Plaintiff and the North Dakota Class)

83. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

84. The overtime provisions of the North Dakota Admin. Code - §46-02-07-02(4) - and its supporting regulations apply to Defendants, and protect Plaintiff and the North Dakota Class.

85. Defendants failed to pay Plaintiff and the North Dakota Class the premium overtime wages to which they were entitled under North Dakota Admin. Code – at a rate of 1.5 times their regular rate of pay – for all hours worked beyond 40 per workweek.

86. Through their knowing or intentional failure to pay Plaintiff and the North Dakota Class the appropriate overtime wages for hours worked in excess of 40 hours per workweek, Defendants willfully violated the North Dakota Admin. Code, § 46-02-07-02(4).

87. Due to Defendants' willful violations of the North Dakota Admin. Code, Plaintiff and the North Dakota Class are entitled to recover from Defendants their unpaid

15

overtime wages, applicable interest, liquidated damages, and reasonable attorneys' fees and costs pursuant to North Dakota Wage Law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of the FLSA Collective and Colorado and the North Dakota Classes, respectfully request that this Court grant the following relief:

A. That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all Wireline Engineers and other similarly situated workers who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked at MBI Energy nationwide. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B. Unpaid overtime pay and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D. Designation of Plaintiff as a representative of the Colorado and North Dakota Class and counsel of record as Class Counsel;

16

   E. Unpaid overtime wages and applicable penalties as permitted by law pursuant to Colorado Wage Laws;

   F. Unpaid overtime wages and liquidated damages as permitted by law pursuant to North Dakota Wage Law;

   G. Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA, as well as under the relevant state laws.

   H. Reasonable attorneys' fees and costs of the action; and

   I. Such other relief as this Court shall deem just and proper.

Dated:  March 18, 2019								Respectfully submitted,


									**/s/ Richard (Rex) Burch**
									Richard (Rex) Burch

									**BRUCKNER BURCH PLLC**
									Richard J. (Rex) Burch
									8 Greenway Plaza #1500
									Houston, Texas 77046
									Telephone: (713) 877-8788

									**FITAPELLI & SCHAFFER, LLP**
									Joseph A. Fitapelli, *pro hac vice forthcoming*
									Armando A. Ortiz, *pro hac vice forthcoming*
									28 Liberty Street, 30th Floor
									New York, New York 10005
									Telephone:  (212) 300-0375


									*Attorneys for the Plaintiff and Putative Collective and Classes*

18

## FAIR LABOR STANDARDS ACT CONSENT

1. I consent to be a party plaintiff in a lawsuit against MBI ENERGY SERVICES and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2. By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP and BRUCKNER BURCH, PLLC ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

*Timothy Warren (Oct 25, 2018)*
_____
Signature

# Timothy Warren
_____
Full Legal Name (Print)