**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-00800-RM-STV

TIMOTHY WARREN,
individually and on behalf of all others similarly situated,

      Plaintiff,

v.

MBI ENERGY SERVICES, INC.,
MISSOURI BASIN WELL SERVICES, INC., d/b/a MBI ENERGY, and
HIGH PLAINS INC.,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

Magistrate Judge Scott T. Varholak

      This matter comes before the Court on Plaintiff's Expedited Motion for Conditional Certification and Notice Pursuant to 29 U.S.C. § 216(b) (the "Motion") [#23], which has been referred to this Court [#24].  This Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the instant Motion.  For the following reasons, this Court respectfully **RECOMMENDS** that the Motion be **GRANTED**.[1]

_____

[1] *See, e.g.*, *Abdulina v. Eberl's Temp. Servs., Inc.*, No. 14-cv-00314-RM-NYW, 2015 WL 12550929, at *2 (D. Colo. Apr. 27, 2015) (treating motion for conditional certification as dispositive for the purposes of 28 U.S.C. § 636(b)), *report and recommendation adopted as modified*, 2015 WL 4624251 (D. Colo. Aug. 4, 2015).

I.   **BACKGROUND**[2]

Defendants MBI Energy Services, Inc., Missouri Basin Well Services, Inc., and High Plains Inc. (collectively, "MBI")[3] provide well completion services throughout the United States, including in regions of North Dakota, Colorado, and Wyoming.  [#1 at ¶¶ 1-2, 4]  MBI employs hundreds of oilfield workers, including salaried wireline engineers, wireline field engineers, field supervisors, and similar positions in the wireline division (collectively, "Wireline Engineers").  [*Id.* at ¶¶ 1, 5; *see also* #23 at 2-3; #23-3 at ¶ 4; #23-4 at ¶ 4]

As Wireline Engineers, Plaintiff Timothy Warren and others work on oil well sites, typically on 12-hour shifts, seven days a week, for weeks at a time.  [#1 at ¶ 6]  The primary duties of Wireline Engineers are manual in nature, including traveling to and from well sites, operating the wireline truck's winch, helping wireline operators set up lines, rigging up and rigging down job sites, and completing routine client and company checklists.  [*Id.* at ¶¶ 8-9, 54]  MBI prohibits its employees from diverging from predetermined job duties, checklists, and company policies.  [*Id.* at ¶ 55] Mr. Warren and other Wireline Engineers were required to wear personal protective equipment due to their exposure to various hazards on the job, including chemicals, sharp objects, and

---

[2] The Court makes the initial determination of whether a Fair Labor Standards Act ("FLSA") collective action may be maintained based on the allegations in the complaint and any supporting affidavits filed by the plaintiff.  *Norwood v. WBS, Inc.*, No. 15-cv-00622-MSK-KMT, 2016 WL 7666525, at *1 (D. Colo. Sept. 29, 2016).

[3] MBI Energy Services, Inc. is the parent company of Missouri Basin Well Service, Inc. [#1 at ¶ 30; #27 at ¶ 3]  Missouri Basin Well Service, Inc. acquired High Plains Inc. in 2011, and the companies merged in June 2016.  [#1 at ¶¶ 3, 45; *see also* #23-1 at ¶ 3; #27 at ¶ 3]

volatile working conditions. [*Id.* at ¶ 56] Wireline Engineers are required to work throughout all weather conditions. [*Id.*]

Mr. Warren was employed as a Wireline Engineer from approximately March 2014 through January 2018. [*Id.* at ¶ 18] Mr. Warren was generally assigned to MBI's territories near Casper, Wyoming, Dickenson, North Dakota, and Greeley, Colorado, but also worked for MBI in other states, including South Dakota, Montana, and Utah. [*Id.* at ¶ 50] Mr. Warren was assigned to job shifts at least 12 hours in length for 14 days at a time. [*Id.* at ¶ 51] At the beginning of his employment through November 2014, Mr. Warren generally worked 7 days a week, with only about 3 or 4 days off each month. [*Id.* at ¶ 52] As noted above, this schedule is typical for Wireline Engineers. [*Id.* at ¶ 6] Beginning in November 2014, Mr. Warren was assigned to a variety of work schedules, ranging from 14 days on with 7 days off ("14/7"), 15 days on with 6 days off ("15/6"), and 20 days on with 10 days off ("20/10"). [*Id.* at ¶ 52] By November 2015, MBI required Mr. Warren to work 7 days per week with sporadic days off. [*Id.*] As a result of these schedules, Mr. Warren and other Wireline Engineers consistently worked over 40 hours per week. [*Id.*]

Mr. Warren alleges that MBI violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and corresponding Colorado and North Dakota wage and hour laws, by improperly classifying him and other Wireline Engineers as exempt from the overtime provisions of the FLSA. [*See generally* #1] Instead, MBI compensated Mr. Warren and other similarly situated Wireline Engineers with a salary and job bonus, regardless of hours worked. [*Id.* at ¶ 53] Mr. Warren alleges that MBI implemented this pay structure in order to avoid compensating Wireline Engineers for hours worked in excess of 40 hours per week. [*Id.* at ¶ 7]

Mr. Warren filed the instant action on March 18, 2019. [#1] In addition to Mr. Warren as the named Plaintiff, three other individuals have consented to join in this action—Justin Dykes, David Alvey, and Jacob Bratton. [#8] Mr. Warren, Mr. Dykes, Mr. Alvey, and Mr. Bratton have filed declarations in support of the instant Motion. [##23-1-23-4] In these declarations, the individuals detail similar experiences as Wireline Engineers working for MBI. [*Id.*]

Specifically, each of the individuals notes that MBI never provided them with overtime pay, despite the fact that they all regularly worked over 40 hours per week. [*Id.*] Instead, the Wireline Employees were paid with a salary and a commission or production bonus, if they qualified. [*Id.*] They did not have any specialized degrees as Wireline Engineers, and MBI did not provide formal training on how to work as a Wireline Engineer. [*Id.*] The individuals describe spending a majority of their time as Wireline Engineers performing hard labor such as rigging up and rigging down job sites, running tool strings in and out of the wells, cleaning the job sites and tools, working with the wireline truck's winch, and otherwise assisting wireline operators during the well completion process. [*Id.*] While on the job, the Wireline Engineers wore hard hats, steel toe boots, safety glasses, work gloves, impact gloves, and fire-resistant coveralls, and were routinely exposed to sand, dirt, and other debris from the wireline process. [*Id.*] The Wireline Engineers were assigned to several different worksites, including in Wyoming, Colorado, and North Dakota. [*Id.*] Their job duties remained the same irrespective of the job site, and accordingly, MBI did not retrain them on their jobs when they were assigned to new worksites. [*Id.*] The Wireline Engineers had no role in the wireline plan for the site, and they routinely filled out job summary forms that were submitted to management or

4

supervisors.  [*Id.*]  The Wireline Engineers did not hire, fire, or interview anyone for MBI. [*Id.*]

Mr. Warren filed the instant Motion on September 6, 2019.  [#23]  Mr. Warren seeks conditional certification of the following class:

> All Wireline Engineers, Wireline Field Engineers, Field Supervisors, and similar positions employed by MBI during the last three years who were paid with a salary and/or commission/production bonus and who did not receive overtime pay.

[*Id.* at 2]  Mr. Warren requests that the Court: (1) conditionally certify this action for notice and discovery; (2) approve the form and content of his proposed judicial notice and reminder notice; (3) order that a judicially approved notice be sent to all putative class members by mail, email, and text message; (4) order MBI to produce to Plaintiff's counsel the name, last known address, email address, telephone number, and dates of employment for each putative class member; and (5) authorize a 60-day notice period for the putative class members to join the case.  [*Id.* at 18-19]  MBI opposes the Motion [##26, 27], and Mr. Warren has filed a Reply [#29].

## II.   STANDARD OF REVIEW

Section 216(b) of the Fair Labor Standards Act ("FLSA") provides the exclusive means of bringing class-wide claims to redress alleged violations of the FLSA.  *See* 29 U.S.C. § 216(b); *Norwood v. WBS, Inc.*, No. 15-cv-00622-MSK-KMT, 2016 WL 7666525, at *1 (D. Colo. Sept. 29, 2016).  Contrary to the procedures governing a class action under Rule 23, plaintiffs who wish to participate in a FLSA collective action must opt in to the action.  *See Norwood*, 2016 WL 7666525, at *1.

A FLSA collective action may only be maintained by and among "similarly situated" employees.  *See id.*  The Tenth Circuit has adopted a two-step analysis governing that

determination. *See id.* "At the initial 'notice stage,' the trial court must determine whether plaintiffs have made 'substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Id.* (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)).   The Court makes this initial determination relying upon the allegations in the complaint and any supporting affidavits filed by the plaintiffs. *Id.* "[T]he court does not weigh evidence, resolve factual disputes, or rule on the merits of plaintiffs' claims" during the notice stage.   *Koehler v. Freightquote.com, Inc.*, 93 F. Supp. 3d 1257, 1263 (D. Kan. 2015) (quotation omitted). Certification at step one is conditional, "and the standard of proof 'is a lenient one that typically results in class certification,' allowing notice to be sent to the putative class members and discovery to be undertaken." *Norwood*, 2016 WL 7666525, at *1 (quoting *Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004)); *see also Young v. Dollar Tree Stores, Inc.*, No. 11-cv-01840-REB-MJW, 2012 WL 3705005, at *2 (D. Colo. Aug. 24, 2012) (describing the conditional certification burden as "minimal").

After the completion of discovery, the second, or "decertification," stage occurs. *See Norwood*, 2016 WL 7666525, at *1.   During the decertification stage, the court applies a much stricter standard to determine whether class members are similarly situated.   *See id.* "In making that determination, the court must evaluate, *inter alia*, 'the disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether plaintiffs made any required filings before instituting suit.'" *Id.* (quoting *Brown*, 222 F.R.D. at 679)).

### III.   ANALYSIS

The parties disagree with respect to two distinct issues that bear on the instant Motion: (1) whether the Court lacks personal jurisdiction over Defendants on the putative plaintiffs' claims; and (2) whether the putative plaintiffs are similarly situated.   [*See generally* ##23, 26, 29]  The Court addresses each issue in turn.

**A. Personal Jurisdiction**

MBI first contends that the Court lacks personal jurisdiction over MBI with respect to claims by certain putative plaintiffs.  [#26 at 3-13]  Specifically, MBI argues that the Court does not have specific jurisdiction over MBI as to claims by putative plaintiffs who never provided any work in Colorado and were never employed in Colorado, and thus the Court should not issue company-wide notice in this matter.  [*Id.* at 5-13]  The Court first addresses whether it has personal jurisdiction over MBI relating to Mr. Warren's FLSA claims.  The Court then discusses whether company-wide notice is appropriate, based on the Court's jurisdiction over MBI as to claims by Wireline Engineers outside of Colorado.

**1.  Personal Jurisdiction as to Mr. Warren's FLSA Claims**

"A court must have . . . . power over the parties before it (personal jurisdiction) before it can resolve a case."  *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 562 (2017).   The plaintiff bears the burden of establishing personal jurisdiction over defendants.  *See, e.g.*, *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1998). At the preliminary stages of litigation, the plaintiff need only make a prima facie showing of personal jurisdiction through facts alleged in affidavits or other written materials, which

if true would support jurisdiction over the defendant.  *See, e.g.*, *Floyd's 99 Holdings, LLC v. Jude's Barbershop, Inc.*, 898 F. Supp. 2d 1202, 1205 (D. Colo. 2012).

In determining whether a federal court has personal jurisdiction over a nonresident defendant, the court must determine first, "whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant," and second, "whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quotations omitted).  "Where, as here, the underlying action is based on a federal statute, the court applies state personal jurisdiction rules if the federal statute does not specifically provide for national service of process." *Toytrackerz LLC v. Koehler*, No. 08-2297-GLR, 2009 WL 1505705, at *3 (D. Kan. May 28, 2009).  Here, because the FLSA is silent as to service of process, the Court looks to Colorado rules of personal jurisdiction.  *See Green v. Fishbone Safety Sols., Ltd.*, No. 16-cv-01594-PAB-KMT, 2017 WL 4012123, at *1 (D. Colo. Sept. 12, 2017) (citing *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op.*, 17 F.3d 1302, 1304-05 (10th Cir. 1994)).

"A plaintiff seeking to invoke a Colorado court's jurisdiction over a non-resident defendant must comply with the requirements of [Colorado's] long-arm statute and constitutional due process." *Touchtone Grp., LLC v. Rink*, 913 F. Supp. 2d 1063, 1074-75 (D. Colo. 2012) (quoting *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005)).  Courts in this District consider Colorado's long-arm statute, Colo. Rev. Stat. § 13-1-124, to be a codification of the "minimum contacts" test, which requires a defendant to have minimum contacts with the forum state such that bringing the defendant into court in Colorado would not offend "traditional notions of fair play and substantial justice," in accordance with the Due Process Clause.  *Brooks v. Tarsadia*

8

*Hotels*, No. 17-cv-03172-PAB-KMT, 2018 WL 2301839, at *2 (D. Colo. May 21, 2018) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The minimum contacts test can be satisfied either through specific or general jurisdiction.  *Id.* at 3.  Mr. Warren asserts specific jurisdiction here.  [*See* #29 at 9 n.5]  A court has specific jurisdiction over a defendant if sufficient minimum contacts show that: (1) the defendant has purposefully availed itself of the privilege of conducting activities or completing a transaction in the forum state; and (2) the litigation results from alleged injuries that arise out of or relate to those activities.  *Brooks*, 2018 WL 2301839, at *3 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  "Even if a plaintiff has met its burden of establishing minimum contacts," the Court nevertheless must "inquire whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice," considering factors including the burden on the defendant, the forum's state's interest in resolving the dispute, and the plaintiff's interest in receiving convenient and effective relief.  *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 908-09 (10th Cir. 2017) (quotation omitted).

Applied here, this Court has specific jurisdiction over MBI as to Mr. Warren's claims, and Defendants do not seem to contest this fact.  [*See* #26 at 5-13]  Defendants admit that MBI opened a wireline facility in Colorado in November 2017, "in an attempt to establish operations there."  [#27 at ¶ 7]  Four wireline engineers were employed at the Colorado facility before it closed in May 2018.  [*Id.*]  Defendants also note that MBI crews that were based in states other than Colorado nevertheless performed work in Colorado in 2016, April and May 2017, and March 2018.  [*Id.* at ¶¶ 8-10]  Defendants also advertised for Wireline Engineers for its Colorado operations.  [#23-9 at 11, 13, 18, 20-21, 27, 31-

32]  Moreover, Mr. Warren and the current putative class members worked for MBI in Colorado.  [#23-1 at ¶ 5; #23-2 at ¶ 5; #23-3 at ¶ 5; #23-4 at ¶ 5]  MBI's efforts to promote and expand its work in the state of Colorado indicate that it has purposefully availed itself of conducting business in Colorado, and Mr. Warren's injuries stem at least in part from MBI's alleged failure to compensate him with overtime pay, including for his work in Colorado.  *See, e.g.*, *Arrow Elecs., Inc. v. Deco Lighting, Inc.*, No. 1:18-cv-1100-RM-KLM, 2019 WL 926921, at *3 (D. Colo. Feb. 26, 2019) (finding out of state defendant had minimum contacts with Colorado by creating an ongoing relationship with a business in the forum).  *Cf. Greene*, 2017 WL 4012123, at *3, *4 (dismissing one defendant that had no contacts with Colorado, including no employees, offices, property, business, recruitment, or hiring in Colorado, but finding the other defendant had availed himself "of the privilege of conducting activities" in Colorado by visiting the state twice for business, and meeting with the plaintiff in Colorado).

Finally, Defendants do not argue that the exercise of personal jurisdiction as to Mr. Warren's claims "would offend traditional notions of fair play and substantial justice."  *See, e.g.*, *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1080 (10th Cir. 2008) (holding if minimum contacts with the forum state are established, the burden is on the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" (quotation omitted)).  Accordingly, the Court has specific jurisdiction over MBI as to Mr. Warren's claims.

### 2. Company-Wide Notice

MBI argues that company-wide notice is not appropriate in this matter because the Court does not have jurisdiction over MBI as to putative class members that did not work

in Colorado, because exercising specific jurisdiction over MBI as to those claims would violate Due Process.  [#26 at 8-13]  MBI contends that the Supreme Court's holding in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017), should apply to the FLSA claims here, divesting this Court of specific jurisdiction over claims asserted by non-resident putative plaintiffs against non-resident MBI.  [#26 at 10-13]

In *Bristol-Myers*, the Supreme Court addressed the due process protections of the Fourteenth Amendment as they apply to a state court's exercise of specific jurisdiction over mass tort claims asserted by out-of-state plaintiffs against an out-of-state defendant. 137 S. Ct. at 1778-84.  There, nearly 700 plaintiffs had filed a mass tort action against the defendant in California state court, for injuries caused by one of the defendant's drugs. *Id.* at 1778.  Nearly 600 of the plaintiffs were residents of states other than California, and had not suffered their alleged injuries in California.  *Id.*  The defendant was incorporated in Delaware and headquartered in New York, with substantial operations in New York and New Jersey.  *Id.* at 1777-78.

The Supreme Court held that the California state court could not exercise personal jurisdiction over the claims of the out-of-state plaintiffs, and had erred in finding specific jurisdiction "without identifying any adequate link between [California] and the nonresidents' claims." *Id.* 1781.  As the Supreme Court explained, "[t]he relevant plaintiffs are not California residents and do not claim to have suffered harm in that State.   In addition . . . all the conduct giving rise to the nonresidents' claims occurred elsewhere.  It follows that the California courts cannot claim specific jurisdiction." *Id.* at 1782.  The Supreme Court noted that its holding would "not prevent the California and out-of-state

plaintiffs from joining together in a consolidated action in the States that have general jurisdiction" over the defendant, or from residents of particular states suing together in their home states.  *Id.* at 1783.  The Supreme Court limited its decision to "the due process limits on the exercise of specific jurisdiction by a State," expressly leaving "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court."  *Id.* at 1783-84.

No circuit court of appeals has addressed the impact of *Bristol-Myers* on FLSA collective actions.  *See, e.g.*, *Turner v. Concentrix Servs., Inc.*, No. 1:18-cv-1072, 2020 WL 544705, at *2 (W.D. Ark. Feb. 3, 2020).  And in the wake of *Bristol-Myers*, federal district courts are divided on the question of whether that decision divests courts of specific jurisdiction over the claims of non-resident plaintiffs in FLSA collective actions. *See, e.g.*,  *Pettenato v. Beacon Health Options, Inc.*, No. 19-CV-1646 (JPO) (BCM), 2019 WL 5587335, at *6-8 (S.D.N.Y. Oct. 25, 2019) (collecting cases).  One line of cases stems from *Swamy v. Title Source, Inc.*, which held that "*Bristol-Myers* does not apply to divest courts of personal jurisdiction in FLSA collective actions."  No. C 17-cv-01175 WHA, 2017 WL 5196780, at *2 (N.D. Cal. Nov. 10, 2017).  The *Swamy* Court reasoned that an FLSA claim is "a federal claim created by Congress specifically to address employment practices nationwide," that "Congress created a mechanism for employees to bring their claims on behalf of other employees who are 'similarly situated,'" and that Congress "in no way limited those claims to in-state plaintiffs."  *Id.* (citing 29 U.S.C. §§ 202, 207(a), 216(b)).  The court also noted that applying *Bristol-Myers* to collective actions "would splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate

employees' rights." *Id.* The court concluded that to satisfy personal jurisdiction in an FLSA collective action, the defendant must be "subject to personal jurisdiction in [the forum] to claims brought by . . . the sole named plaintiff." *Id.*

The other line of cases derives from *Maclin v. Reliable Reports of Texas, Inc.*, which held that *Bristol-Myers* does apply to FLSA claims, divesting courts of jurisdiction over FLSA claims by out-of-state plaintiffs against the defendant. 314 F. Supp. 3d 845, 850 (N.D. Ohio 2018). The *Maclin* Court could not discern any meaningful difference between the Due Process protections of the Fourteenth Amendment, as in *Bristol-Myers*, and the Fifth Amendment, with respect to the FLSA claims, and declined to "limit the holding in *Bristol-Myers* to mass tort claims or state courts." *Id.* at 850-51. The court noted that its decision would not prevent out-of-state plaintiffs from filing a nationwide collective action in a state with general jurisdiction over the defendant, or in their home states. *Id.* at 851.

The Court finds the *Swamy* line of cases more persuasive, for the following reasons. First, the FLSA collective action context is fundamentally distinguishable from the mass tort action before the Supreme Court in *Bristol-Myers*. As other federal district courts have recognized, in a FLSA collective action, "there is only one suit: the suit between Plaintiff and [the] Defendant[s]. While Plaintiff may end up representing other class members, this is different than a mass action where independent suits with independent parties in interest are joined for trial." *Hunt v. Interactive Med. Specialists, Inc.*, No. 1:19CV13, 2019 WL 6528594, at *3 (N.D. W. Va. Dec. 4, 2019) (quoting *Morgan v. U.S. Xpress, Inc.*, No. 3:17-cv-00085, 2018 WL 3580775, at *3-*6 (W.D. Va. July 25, 2018) (determining *Bristol-Myers* did not apply in the FLSA collective action context)).

"This is critically important because *Bristol-Myers*[] framed the specific jurisdiction analysis at the level of the suit:  the *suit* must arise out of or relate to the defendant's contacts with the forum."  *Id.* (quoting *Morgan*, 2018 WL 3580775, at \*5); *see also LaVigne v. First Cmty. Bancshares, Inc.*, 330 F.R.D. 293, 297 (D.N.M. 2019) (distinguishing *Bristol-Myers* in the class action context because, unlike a mass tort action combining multiple suits, in a class action one plaintiff represents multiple similarly situated individuals). Unlike the mass tort action in *Bristol-Myers*, the only suit before this Court *does* arise out of and relate to MBI's contacts with Colorado.  *See id.*

Relatedly, as the Eastern District of Louisiana explained in the class action context, the concern in *Bristol-Myers* was forum-shopping by non-resident plaintiffs to reach a non-resident defendant with insufficient contacts to the forum state.  *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 09-2047, 2017 WL 5971622, at \*20 (E.D. La. Nov. 30, 2017).  In contrast, the litigation before the Louisiana court involved defendants that had made enough contacts to the forum state "to hold them liable there in nationwide class actions."  *Id.*  As the court explained, "a nationwide class action in federal court is not about a state's overreaching, but rather relates to the judicial system's handling of mass claims involving numerous . . . parties."  *Id.*; *see also Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F. Supp. 3d 1360, 1366-67 (N.D. Ga. 2018) (same).  The Court finds this reasoning equally applicable in the collective context, where MBI clearly has sufficient contacts with Colorado as to Mr. Warren's claims, and where Congress created the FLSA collective action to handle suits by any number of "similarly situated" individuals.

Second, the Court finds that a broader reading of *Bristol-Myers* would frustrate Congress' goals in passing the FLSA.[4]   Under the statute, "Congress created a mechanism for employees to bring their claims on behalf of other employees who are 'similarly situated,' and in no way limited those claims to in-state plaintiffs." *Swamy*, 2017 WL 5196780, at *2 (quoting 29 U.S.C. § 216(b)); *see also* 29 U.S.C. §§ 202, 207(a); *Turner*, 2020 WL 544705, at *2 (same); *Meo v. Lane Bryant, Inc.*, No. CV 18-6360 (JMA) (AKT), 2019 WL 5157024, at *12 (E.D.N.Y. Sept. 30, 2019) ("As a remedial statute, Congress intended for nationwide FLSA collective actions.   Applying *Bristol-Myers* to FLSA collective actions would countermand that purpose."); *Seiffert v. Qwest Corp.*, No. CV-18-70-GF-BMM, 2018 WL 6590836, at *2 (D. Mont. Dec. 14, 2018) ("*Seiffert I*") ("Unlike the claims at issue in *Bristol-Myers*, . . . the FLSA claims before the Court arise from a federal statute designed to address employment practices nationwide."), *motion to certify appeal denied*, 2019 WL 859045 (D. Mont. Feb. 22, 2019) ("*Seiffert II*").   The Court also agrees that preventing putative plaintiffs who do not reside in the state where the suit is brought, or in a state where the defendant is domiciled, from being a part of the collective action "would splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights." *Swamy*, 2017 WL 5196780, at *2. *Bristol-*

---

[4] The Court recognizes that Congress cannot violate the due process protections provided by the Constitution.   But the *Bristol-Myers* Court specifically limited its decision to "the due process limits on the exercise of specific jurisdiction by a State," expressly leaving "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court."   137 S. Ct. at 1783-84.   For the reasons articulated herein, the Court does not find that bringing Defendants into federal court in  Colorado under the circumstances presented here offends "traditional notions of fair play and substantial justice."   *Int'l Shoe Co.*, 326 U.S. at 316.

*Myers* does "not mandate[]" such a result, and the Court declines to substitute its judgment for that of Congress by expanding the reach of *Bristol-Myers* in the manner proposed by MBI here.  *Id.*

Finally, "[i]t is well settled that the original plaintiff in a collective action under the FLSA dictates a district court's analysis of specific jurisdiction."   *Seiffert II*, 2019 WL 859045, at *4 (citing cases); *see also Szewczyk v. United Parcel Serv., Inc.*, No. 19-1109, 2019 WL 5423036, at *8 (E.D. Pa. Oct. 22, 2019) ("[I]t is well-established that when a single named plaintiff seeks to bring a claim on behalf of a class or collective, that named plaintiff must establish that the court has personal jurisdiction over the defendant with respect to his or her claim." (collecting cases)); *Senne v. Kan. City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1022 (N.D. Cal. 2015) (noting that specific jurisdiction must be demonstrated by the named plaintiffs in a FLSA collective action).  Moreover, from a practical standpoint, the ultimate certification issue could be delayed continually "if the district court had to evaluate whether it possessed personal jurisdiction over each new opt-in plaintiff."  *Seiffert I*, 2018 WL 6590836, at *4.  Here, the Court has determined, and MBI does not contest, that specific jurisdiction exists over Mr. Warren's claim, the sole named plaintiff in this FLSA collective action.  The "proper exercise of personal jurisdiction over [Mr. Warren] proves sufficient at this stage of the case to satisfy the personal jurisdiction requirement for an FLSA collective action."  *Id.*; *see also Swamy*, 2017 WL 5196780, at *2 ("It is undisputed that [defendant] is subject to personal jurisdiction in California to claims brought by . . . the sole named plaintiff in this action, which is all that is needed to satisfy the requirement of personal jurisdiction in an FLSA collective action.").

Accordingly, specific jurisdiction over MBI is proper here, and company-wide notice is appropriate.

### B. Whether Mr. Warren and the Putative Plaintiffs are Similarly Situated

MBI next argues that the putative plaintiffs are not similarly situated. [#26 at 13-14] As discussed above, at this initial notice stage, Mr. Warren need only assert "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102. Mr. Warren alleges that MBI violated the FLSA by improperly classifying him and other Wireline Engineers as salaried workers, exempt from the FLSA overtime provisions, enabling MBI to withhold overtime wages due to them for working over 40 hours a week. [*See generally* #1] The Court need not address the merits of Mr. Warren's claims, but rather will simply consider whether Mr. Warren has adequately pleaded in his complaint and in any supporting affidavits that he and other putative plaintiffs were the victims of a common decision, policy, or plan by MBI to improperly classify them as salaried workers. *See Thiessen*, 267 F.3d at 1102; *see also Abdulina v. Eberl's Temp. Servs., Inc.*, No. 14-cv-00314-RM-NYW, 2015 WL 12550929, at *4 (D. Colo. Apr. 27, 2015) ("Conditional certification has been denied only where the complaint was wholly conclusory in nature, the supporting affidavit relied on hearsay from unidentified sources, and the nature of the violation was rendered ambiguous by the particular circumstances of the only named plaintiff."), *report and recommendation adopted as modified*, 2015 WL 4624251 (D. Colo. Aug. 4, 2015).

Courts have generally found the question of whether a defendant improperly misclassified workers to avoid paying overtime compensation to be suitable for collective treatment at the initial stage. For example, in *Grady v. Alpine Auto Recovery, LLC*, this

District found that the plaintiff made substantial allegations that putative class members were similarly situated where he claimed that truck drivers were misclassified as independent contractors in order for defendants to reduce operating costs and limit liability, and where plaintiff and other drivers routinely worked over 40 hours per week, but due to alleged misclassification, were not compensated for their overtime work. No. 15-cv-00377-PAB-MEH, 2015 WL 3902774, at *2 (D. Colo. June 24, 2015) (citing *Renfro v. Spartan Comput. Servs., Inc.*, 243 F.R.D. 431, 433-34 (D. Kan. 2007) ("Generally, where putative class members are employed in similar positions, the allegation that defendants engaged in a pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together the victims of a single decision, policy or plan.")); *see also Ward*, 2018 WL 1604622, at *5-6 (plaintiffs satisfied step one burden where they alleged that they and other drivers were misclassified as independent contractors, that the drivers received a daily manifest of deliveries for the day that had to be completed before stopping work for the day, which often required working in excess of 40 hours per week, and where the declaration of a potential opt-in plaintiff confirmed those same allegations). Similarly, in *Stallings v. Antero Resources Corporation*, this District held that the plaintiff had substantially alleged that he and other workers were subject to a single policy to be paid as independent contractors and not paid overtime, based on claims that defendant dictated the workers' daily activities, including through "standardized plans, procedures, and checklists created by [defendant]," prohibited workers from negotiating additional assignments from defendant's clients, that the workers performed the same or similar job duties, and that the workers regularly worked for defendant in excess of 40 hours a week but received a flat daily rate and no overtime pay. 2018 WL 1250610, at *4-5.

Likewise here, Mr. Warren and the putative class members allege that they were improperly classified as salaried employees, enabling MBI to withhold overtime wages owed to them for working over 40 hours a week. [*See generally* ##1, 23-1-23-4]  Mr. Warren alleges that  he and the other Wireline Engineers were assigned to a variety of work schedules, including 14/7, 15/6, and 20/10 shifts, and also 7 days per week with sporadic days off. [#1 at ¶¶ 6, 52]  As a result of these schedules dictated by MBI, Mr. Warren and other Wireline Engineers consistently worked over 40 hours per week. [*Id.*]  Moreover, each of the individuals note that they performed the same tasks, mainly consisting of manual labor at well sites. [*See generally* ##1, 23-1-23-4]  They state that they had no role in the wireplan for their assigned sites, and submitted job summary forms to management or supervisors for review. [*Id.*]  The Wireline Engineers did not hire, fire, or interview anyone for MBI. [*Id.*]  Mr. Warren's Complaint, and the affidavits of the putative class members, constitute substantial allegations that the putative class members were similarly situated as targets of MBI's policy to misclassify Wireline Engineers as salaried employees.

The Court is not persuaded by MBI's argument that Wireline Engineers are not similarly situated to field supervisors. [#26 at 14]  Specifically, MBI takes issue with Mr. Bratton's statement that he worked as a Wireline Engineer, "which was also known as a Wireline Field Engineer or Field Supervisor." [#23-4 at ¶ 4; *see also* #26 at 14]  MBI argues that a field supervisor is not the same position as a wireline engineer, and that these positions are compensated differently. [#26 at 14]

First, the affidavits before the Court indicate that the Wireline Engineer position is in fact analogous to a field supervisor [#23-3 at ¶ 4; #23-4 at ¶ 4], and MBI has not

produced any evidence to the contrary.  Moreover, even assuming that the putative plaintiffs worked in positions in addition to the Wireline Engineer role, any "disparate factual and employment settings of the individual plaintiffs" are reserved for the second, decertification step—these discrepancies do not impact the Court's analysis at the initial conditional certification stage.  *Thiessen*, 267 F.3d at 1103 (quotation omitted); *see also Koehler*, 93 F. Supp. 3d at 1264 (finding the court could consider defendant's arguments of factual discrepancies between the putative plaintiffs at the second certification stage, but that "plaintiffs ha[d] met their burden for the Court to certify conditionally their FLSA claims as a collective action"); *Williams v. Sprint/United Mgmt. Co.*, 222 F.R.D. 483, 487 (D. Kan. 2004) (finding that "[w]hile any differences between and among plaintiff and the opt-ins may be relevant after discovery is completed and the court makes a conclusive determination of whether the plaintiffs are 'similarly situated' upon revisiting the certification issue," those differences "are simply not relevant at the notice stage when plaintiff . . . has set forth substantial allegations" that all individuals were subject to the same "pattern and practice" of wrongful conduct by defendant).  Here, the allegations that Wireline Engineers routinely worked over 40 hours per week, based on work schedules set by MBI, and did not receive overtime pay due to their classification as salaried employees, are sufficient to meet the conditional certification burden.

Accordingly, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED** and that a company-wide class of Wireline Engineers be conditionally certified, as described in greater detail below.

### C. Notice

Notice to FLSA collective action members must "contain accurate information concerning the collective action so that potential plaintiffs can make informed decisions as to their participation." *Armijo v. Star Farms, Inc.*, No. 14-cv-01785-MSK-MJW, 2015 WL 13310426, at *2 (D. Colo. Dec. 14, 2015); *see also Grady*, 2015 WL 3902774 at *3. Here, MBI does not raise any objections to Mr. Warren's proposed Notice and Consent Forms, or any of the proposed notice procedures. Accordingly, the Court treats the proposed notice procedures as unopposed.

Mr. Warren requests that the Court order Defendants to provide the names, current and last known home addresses, email addresses, and phone numbers of the class members, and that notice be provided by mail, email, and text message. [#23 at 16-19] The Court finds that email and text message notice, in addition to notice by mail, is appropriate here, where the putative plaintiffs have attested to being away from home for long periods of time, often unable to check their physical mail. [*See* #23-1 at ¶ 23; #23-2 at ¶ 23; #23-3 at ¶ 23; #23-4 at ¶ 23]; *see also Sobolewski v. Boselli & Sons, LLC*, No. 16-cv-01573-RM-STV, 2017 WL 4586108, at *4 (D. Colo. Oct. 16, 2017) (approving email notice because it "provides a greater likelihood that all potential opt-in plaintiffs will receive notice"); *Landry v. Swire Oilfield Servs., L.L.C.*, 252 F. Supp. 3d 1079, 1129 (D.N.M. 2017) (granting mail, email, and text message notices where such notice would "increase the chance of the class members receiving and reading the notice, especially because class members likely are dispersed to various wellsites around the country and may be away from their homes and addresses of record for weeks or months at a time" (quotation omitted)). Moreover, upon review of the proposed Notice and Consent Forms [##23-10-

23-12], the Court finds that these documents contain accurate information and properly provide information to allow potential plaintiffs to make an informed decision as to their participation in this matter.   The Court also finds that Mr. Warren's proposed notice schedule, including a 60-day notice period for putative plaintiffs to join this litigation, is proper.  [#23 at 17]

Accordingly, if the instant Recommendation that this collective action be conditionally certified is adopted, the Court further **RECOMMENDS** that the Court approve the Notice and Consent Forms for notice by mail, email, and text message, order Defendants to provide the names, current and last known home addresses, email address, and phone numbers of the putative class members, that notice be sent to all putative class members by mail, email, and text message, and that the Court adopt Mr. Warren's proposed notice schedule.  [*See* #23 at 16-19]

## IV.   CONCLUSION

For the foregoing reasons, this Court respectfully **RECOMMENDS** that:

(1)   Mr. Warren's Expedited Motion for Conditional Certification and Notice Pursuant to 29 U.S.C. § 216(b) [#23] be **GRANTED**;

(2)   The following class be conditionally certified for purposes of Mr. Warren's FLSA collective action claims:

> All Wireline Engineers, Wireline Field Engineers, Field Supervisors, and similar positions employed by MBI during the last three years who were paid with a salary and/or commission/production bonus and who did not receive overtime pay.

(3)   The proposed Notice and Consent Forms be approved;

(4)     Defendants be ordered to produce to Mr. Warren's counsel the names, last known address, email address, telephone number, and dates of employment for each of the class members in a useable electronic format;

(5)     Notice be sent to all putative class members by mail, email, and text message; and

(6)     A 60-day notice period be authorized for the class members to join this case.[5]

DATED:  February 24, 2020                    BY THE COURT:


                                             s/Scott T. Varholak
                                             United States Magistrate Judge

---

[5] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.   "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review."  *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).