## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| TIMOTHY WARREN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>    -against-<br><br>MBI ENERGY SERVICES, INC.; MISSOURI BASIN WELL SERVICE, INC. d/b/a MBI ENERGY; and HIGH PLAINS, INC.;<br><br>                 Defendants. | **No: 1:19-cv-800-RM-STV** |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON LIABILITY

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch
11 Greenway Plaza #3025
Houston, Texas 77046
Telephone: (713) 877-8788

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Armando A. Ortiz
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiffs and the Putative Class Members*

TABLE OF CONTENTS

I.   SUMMARY ...................................................................................................................1

II.   STATEMENT OF UNDISPUTED MATERIAL FACTS .............................................1

III.   APPLICABLE LAW AND STANDARDS......................................................................1

   A.   The Summary Judgment Standard...........................................................................1

      1.   MBI must prove all elements of any claimed exemption. .........................2

   B.   Representative evidence submitted is sufficient for a finding of liability...................3

IV.   ARGUMENT ...................................................................................................................3

   A.   Plaintiffs Made a Prima Facie Case for Unpaid Overtime.............................................3

   B.   MBI Cannot Establish Any of Its Affirmative Defenses...........................................6

      1.   The Primary Duty Test. ..............................................................................6

   C.   MBI Cannot Prove the Executive Exemption Applies to Plaintiffs. ...........................9

   D.   MBI Cannot Prove the Administrative Exemption Applies to Plaintiffs................................11

      1.   MBI cannot show Plaintiffs' primary duty is not production. ................................11

      2.   MBI cannot show Plaintiffs exercised independent judgment related to matters of significance................................................................................................................12

   E.   MBI Cannot Prove the Highly Compensated Exemption Applies to Plaintiffs.......................14

   F.   MBI Cannot Prove the Motor Carrier Act Applies, and Specifically, That the "Small-Vehicle Exception" to the MCA Does Not Apply................................................................................14

   G.   Summary Judgment is Appropriate on MBI's Good Faith Defense.........................................19

V.   CONCLUSION..............................................................................................................20

## **TABLE OF EXHIBITS**

Exhibit 1 .......................................................................... Declaration of Armando Ortiz

Exhibit 2......................................................................Excerpts from 30(b)(6) Deposition of MBI

Exhibit 3.......................................................................... Declaration of Tim Warren

Exhibit 4......................................................................Declaration of Corey Gerken

Exhibit 5.......................................................................... Declaration of Howard Spencer

Exhibit 6.......................................................................... Declaration of Jacob Bratton

Exhibit 7......................................................................Declaration of Robert Crawford

Exhibit 8 .......................................................................... Declaration of Ronnie Johnson

Exhibit 9.......................................................................... Declaration of Ryan Sutton

Exhibit 10......................................................................Declaration of Tom Miller

Exhibit 11.......................................................................... Declaration of Jessie Fuentes

Exhibit 12.......................................................................... Declaration of Antonio Aguilera

Exhibit 13......................................................................Declaration of David Alvey

Exhibit 14......................................................................Complaint

Exhibit 15......................................................................Answer

Exhibit 16......................................................................Rule 1006 Summary Chart

Exhibit 17......................................................................Class List

Exhibit 18......................................................................PPE Issuing Form

Exhibit 19......................................................................Computer Assignment Forms

Exhibit 20......................................................................WARN Notice Sample

Exhibit 21......................................................................HPI to MBI Letters

Exhibit 22...................................................................................................WE Paystub Samples

Exhibit 23................................................................................ WE Offer Letter Samples

Exhibit 24......................................... MBI Responses to Request for Production of Documents

Exhibit 25...................................................................................Referral Program Sample

Exhibit 26............................................................................. Application Excerpts Standard

Exhibit 27.................................................................................Operating Procedures Samples

Exhibit 28.................................................................. Notify Mgmt Policy Term Notice

Exhibit 29.................................................................... Deviation from SOP Email

Exhibit 30...................................................................WO Offer Letters/Paystub Samples

Exhibit 31.................................................................................... Wilkinson Truck Lists

Exhibit 32.................................................................................. Warren Truck Lists

Exhibit 33.................................................................................. Due Diligence Memo

Exhibit 34.................................................................. MBI Responses to Interrogatories

TABLE OF AUTHORITIES

**CASES**

*Allen v. Coil Tubing Servs., L.L.C.*, 846 F. Supp. 2d 678 (S.D. Tex. 2012) ...................................15

*Anderson v. Mt. Clemens*, 328 U.S. 680 (1946) .........................................................................4

*Barfield v. N.Y.City Health & Hosps. Corp.*, 432 F.Supp.2d 390 (S.D.N.Y. 2006) ........................4

*Barth v. Wolf Creek Nuclear Operating Corp.*, 125 F. Supp. 2d 437 (D. Kan. 2000) .......................7

*Bausman v. Interstate Brands Corp.*, 252 F. 3d 1111 (10th Cir. 2001) ........................................2

*Berry v. Best Transportation, Inc.*, No. 4:16-CV-00473, 2018 WL 6830097  (E.D. Mo. Dec. 27, 2018)...16

*Bolick v. Mgmt. by Skylane, LLC*, No. H-07-2261, 2008 WL 4589961 (S.D. Tex. Oct. 14, 2008)..........20

*Bracamontes v. Bimbo Bakeries USA Inc.*, No. 15-CV-02324-RBJ, 2017 WL 3190740

    (D. Colo. July 14, 2017) ......................................................................................19

*Butler v. TFS Oilfield Services, LLC*, No. 16-CV-01150-FB, 2019 WL 177304

    (W.D. Tex. Jan. 11, 2019)....................................................................................15

*Carlton v. JHook Investments, Inc.*, No:17-CV-00076 KGB, 2019 WL 4784801

    (E.D. Ark. Sept. 30, 2019)...................................................................................19

*Chambers v. Sodexo, Inc.*, 510 F. App'x 336 (5th Cir. 2013) .......................................................9

*Childress v. Ozark Delivery of Missouri L.L.C.*, 95 F. Supp. 3d 1130 (W.D. Mo. 2015)...............19

*Crookston v. Doctor's Inc.*, No. 16-2071-JTM, 2017 WL 2439374 (D. Kan. June 6, 2017) ...............15, 19

*Dewan v. M-I, L.L.C.*, 858 F.3d 331 (5th Cir. 2017)..........................................................passim

*Doty v. Elias*, 733 F.2d 720 (10th Cir. 1984) ..........................................................................19

*Elliott v. Drill-Quip, Inc.*, No. 14 Civ. 1743, 2015 WL 7302764 (S.D. Tex. Nov. 18, 2015)...................12

*Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184 (10th Cir. 2015)..............................................3

*Espinosa v. Stevens Tanker Division, LLC*, No. 15 Civ. 897 (XR), 2017 WL 6021861

    (S.D. Tex. Dec. 5, 2017) ...................................................................................................12

*Fowler v. Incor*, 279 F.App'x 590 (10th Cir. 2008) ...................................................................15

*Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300 (10th Cir. 2014)......................................................3

*Gowey v. True Grip & Lighting, Inc.*, 520 F. Supp. 3d 1013 (E.D. Tenn. 2021) .........................18

*Guyton v. Legacy Pressure Control*, No. 15 Civ. 1075 (RCL), 2017 WL 244868

    (W.D. Tex. Jan. 18, 2017)................................................................................................14

*Hobbs v. EVO Inc.*, 394 F. Supp. 3d 717 (S.D. Tex. 2019), *aff'd*, 7 F.4th 241 (5th Cir. 2021)................14

*Hobbs* v. EVO *Incorporated*, 7 F.4th 241 (5th Cir. 2021) .............................................................12

*Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d. 903 (E.D. La. Apr. 2, 2009) ......................9, 20

*Kelley v. Unisys Corp.*, No. 19-CV-03237-PAB-MEH, 2021 WL 1192932 (D. Colo. Mar. 29, 2021) . 2, 3

*Kenney v. Helix TCS, Inc.*, 939 F.3d 1106 (10th Cir. 2019).....................................................3, 5

*Koellhoffer v. Plotke-Giordani*, 858 F.Supp.2d 1181 (D. Colo. Mar. 12, 2012) ...........................19

*Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822 (10th Cir. 2012) ...........................................6

*Marzuq v. Cadete Enterprises, Inc.*, 807 F.3d 431 (1st Cir. 2015) ..............................................10

Masterson v. Tucker Energy Servs., Inc., No. SA-16-CA-749-OLG-HJB, 2018 WL 5733188  (W.D.

    Tex. Aug. 28, 2018), adopted, No. CV SA-16-CA-749-OLG, 2018 WL 5733157

    (W.D. Tex. Sept. 25, 2018)........................................................................................ 10, 15

*Montavlo v. Tower Life Bldg.*, 425 F.2d 1135 (5th Cir. 1970) .....................................................5

*Murphy v. AllStaff Homecare, LLC*,  No. 16-cv-2370-WJM-MEH, 2019 WL 4645440

    (D. Colo. Sept. 24, 2019) ................................................................................................5

*Ott v. Chacha in Art LLC*, No. 18-cv-01135-LTB-GPG, 2020 WL 8816456

    (D. Colo. Dec. 14, 2020) ............................................................................................ 1, 2

*Polycarpe v. E & S Landscaping Service, Inc.*, 821 F.Supp.2d 1302 (S.D. Fla. 2011) ......................................5

*Reagor v. Okmulgee Cty. Fam. Res. Ctr.*, 501 F. App'x 805 (10th Cir. 2012) ....................................................5

*Reed v. Bennett*, 312 F.3d 1190 (10th Cir. 2002) ....................................................................................................2

*Renfro v. City of Emporia, Kan.*, 948 F.2d 1529 (10th Cir. 1991) ...................................................................19

*Scalia v. Paragon Contractors Corporation*, 957 F.3d 1156 (10th Cir. 2020) .............................................. 3, 4

Smith v. Frac Tech Servs., LLC, No. 4 Civ. 00679 (JLH), 2011 WL 96868

    (E.D. Ark. Jan. 11, 2011) ...............................................................................................................................12

*Solis v. La Familia Corp.*, No. 10-CV-2400-EFM-GLR, 2013 WL 589613  (D. Kan. Feb. 14, 2013) .....5

*TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754 (5th Cir. 2002) ...........................................................................2

*United States Dep't of Lab v. Five Star Automatic Fire Prot., LLC*, 987 F.3d 436

    (5th Cir. 2021), reh'g denied, 997 F.3d 1258 (5th Cir. 2021) ...................................................................3

*Warner v. Pro Wireline, Inc.*, No. 2:16-CV-0226-SWS, 2017 WL 3457119 (D. Wyo. June 21, 2017) .....15

*White v. York Int'l Corp.*, 45 F.3d 357 (10th Cir. 1995) .........................................................................................1

**STATUTES**

29 U.S.C. § 216(b) ..................................................................................................................................................19

SAFETEA-LU Technical Corrections Act ("TCA") of 2008, Pub. L. No. 110-244, 122 Stat. 1572,

    1620 ...................................................................................................................................................................14

**OTHER AUTHORITIES**

U.S. DOL Fact Sheet #17I: Blue-Collar Workers and the Part 541 Exemptions ...................................9

**REGULATIONS**

29 C.F.R. § 541.100(a) ..............................................................................................................................................9

29 C.F.R. § 541.105 .................................................................................................................... 10

29 C.F.R. § 541.200 .................................................................................................................... 11

29 C.F.R. § 541.202(a) ................................................................................................................ 12

29 C.F.R. § 541.202(b) ................................................................................................................ 13

29 C.F.R. § 541.205(a) ................................................................................................................ 11

29 C.F.R. § 541.700(a) .................................................................................................................. 6

29 C.F.R. § 541.704 ...................................................................................................................... 9

29 C.F.R. § 790.15(a) .................................................................................................................. 19

29 C.F.R. § 790.15(d) .................................................................................................................. 19

29 C.F.R.. § 541.202(f) ................................................................................................................ 13

## I.     SUMMARY

Timothy Warren and the 36 opt-in Plaintiffs[1] should have been paid overtime when they worked as "Wireline Engineers." After all, the Fair Labor Standards Act (FLSA) requires all covered employers to pay to blue-collar oilfield workers (like Plaintiffs) overtime regardless of their job title. Nonetheless, Defendants MBI Energy Services, Inc., Missouri Basin Well Service, Inc., and High Plains Inc. (collectively, "MBI" or "Defendants") worked Plaintiffs to the bone, but refused to pay them overtime.

In fact, MBI continued its illegal pay plan even after a federal court found MBI owed Plaintiffs' day-to-day coworkers additional overtime. Despite knowing its pay practices were illegal, MBI failed to take corrective action or even check to see if they should do something different relating to Plaintiffs. Now, this Court should determine MBI is liable to Plaintiffs. Because discovery is closed, and no material facts are in dispute, Plaintiffs are entitled to summary judgment as to liability.

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to this Court's Civil Practice Standards IV(B)(C)(2), a separate Statement of Undisputed Material Facts is being filed as a separate docket entry. All citations to the record shall be to "SUMF ¶ ___" or to the exhibits themselves. All exhibits are filed with the SUMF.

## III.     APPLICABLE LAW AND STANDARDS

### A. The Summary Judgment Standard.

"The purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary." *Ott v. Chacha in Art LLC*, No. 18-cv-01135-LTB-GPG, 2020 WL 8816456, at *22 (D. Colo. Dec. 14, 2020) (citing *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995)). Rule 56(c)

---

[1] *See* **Exhibit ("Ex.") 16**, 1006 Summary Chart, which identifies the Plaintiffs in this matter. Plaintiffs can provide the underlying documents identified in the Summary Chart upon request.

mandates that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*

The movant "bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the [evidence] which it believes demonstrate the absence of genuine issues for trial." The opposing party "must respond with specific facts showing the existence of a genuine factual issue to be tried." *Id.*

Where the moving party "does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's case." *Kelley v. Unisys Corp.*, No. 19-CV-03237-PAB-MEH, 2021 WL 1192932, at *5 (D. Colo. Mar. 29, 2021) (citing *Bausman v. Interstate Brands Corp.*, 252 F. 3d 1111, 1115 (10th Cir. 2001)). Here, to avoid summary judgment, MBI "must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.* Said differently, MBI must point to specific evidence establishing a genuine issue of material fact as to each challenged element. *See Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are no substitute for facts showing a genuine dispute. *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002). When reviewing a motion for summary judgment, the court views the evidence in light most favorable to the non-moving party. *Bausman*, 252 F.3d at 1115.

### 1.   MBI must prove all elements of any claimed exemption.

"Congress enacted the FLSA in order to protect all covered workers from substandard wages and oppressive working hours, labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers." *Ellis*

*v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1187 (10th Cir. 2015). "Statutory exemptions from the FLSA are affirmative defenses and the employer bears the burden of establishing entitlement." *Scalia v. Paragon Contractors Corporation*, 957 F.3d 1156, 1165 (10th Cir. 2020); *see also Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1109 (10th Cir. 2019). The Supreme Court's decision in *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) "did not change the fact that it is the employer's burden to establish that an exception to the FLSA applies." *Kelley*, 939 F.3d at 1109.

**B.  Representative evidence submitted is sufficient for a finding of liability**

Proof by representative sample in FLSA actions are commonplace and appropriate to determine liability. *See, e.g., Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1307 (10th Cir. 2014); *see also Scalia*, 957 F.3d at 1161. Here, Plaintiffs have submitted declarations from 11 of 37 Plaintiffs, for a sample size of just over 29.7%. This sample size is more than enough for the Court to determine questions of liability collectively. *See, e.g., United States Dep't of Lab v. Five Star Automatic Fire Prot., LLC*, 987 F.3d 436, 444 (5th Cir. 2021), reh'g denied, 997 F.3d 1258 (5th Cir. 2021) (finding no error where magistrate judge found employer liable for overtime based on testimony of 11% sample size of relevant employees – 6 out of 53 individuals). MBI elected not to depose any of the Plaintiffs. **Ex. 1**, Ortiz Decl. ¶ 4.

## IV.    ARGUMENT

**A.  Plaintiffs Made a Prima Facie Case for Unpaid Overtime.**

To prevail on a claim for unpaid overtime, "a plaintiff merely must show that he is an employee who (a) worked more than forty hours per week, and (b) is either 'engaged in commerce or in the production of goods for commerce" or "employed in an enterprise engaged in commerce or in the production of goods for commerce." *Kenney*, 939 F.3d at 1109 (citing 29 U.S.C. 207(a)(1)).

3

That's no problem here. Plaintiffs were employees of MBI. MSUMF ¶ 12. MBI classified Plaintiffs (while Wireline Engineers) as "exempt" regardless of the job location worked or state in which they worked. SUMF ¶ 13. MBI only paid Wireline Engineers a salary and sometimes commissions (if they qualified); but they did not pay Plaintiffs overtime compensation. SUMF ¶ 21.

Plaintiffs regularly worked more than 40 hours a week. Because MBI did not keep accurate records of hours worked by Plaintiffs (SUMF ¶ 19), the relaxed standard set forth in *Mt. Clemens Pottery Co.* applies. Under that standard, "[a]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produced sufficient evidence to show the amount and extent of that work as a matter of just inference." *Scalia*, 957 F.3d at 1161 (quoting *Anderson v. Mt. Clemens*, 328 U.S. 680, 687 (1946)). Unless the employer can meet its burden of coming forward with "evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference", the court "may then award damages to the employee, even though the result be only approximate" *Id.*

Here, Plaintiffs worked overtime on a regular basis. While working on a "hitch" schedule, Plaintiffs worked at minimum 12 hours on job location, excluding drive time to and from the job sites. SUMF ¶ 16-17. Because Plaintiffs worked from 14 to 20 days in a row (and sometimes more), they regularly worked over 40 hours per week.  SUMF ¶ 16-18. Thus, Plaintiffs worked overtime hours without receiving overtime pay.[2]

Finally, Defendants are a covered FLSA enterprise, and in the alternative, Plaintiffs are covered employees under the FLSA. Plaintiffs were undoubtedly "employed in an enterprise engaged in

---

[2] The Court is not required to resolve the amount of damages owed to Plaintiffs when granting partial summary judgment on liability. *See, e.g., Barfield v. N.Y.City Health & Hosps. Corp.*, 432 F.Supp.2d 390, 395 (S.D.N.Y. 2006) (granting summary judgment on liability and directing counsel to submit an estimate of unpaid wages for purposes of damages award); *aff'*, 537 F.3d 132 (2d Cir. 2008). Accordingly, even if the Court believes questions preclude determining damages at this time, summary judgment can still be entered regarding liability. Damages can be determined later. *Id.*

commerce or in the production of goods for commerce." *Kenney*, 939 F.3d at 1109. MBI admits it had over $500,000 in gross revenue/sales during the relevant period. MSUMF ¶ 7. MBI likewise has had at least two employees who handled, sold, or otherwise worked on goods or materials that moved in or were produced for commerce. MSUMF ¶ 8. MBI provided its employees various materials that traveled in interstate commerce, such as oilfield equipment, company pickup trucks, personal protective equipment, laptop computers, and cellular telephones. MSUMF ¶ 8. This evidence is sufficient for a finding Plaintiffs (and other employees) handled goods that moved in interstate commerce. *See, e.g., Murphy v. AllStaff Homecare, LLC,* No. 16-cv-2370-WJM-MEH, 2019 WL 4645440, at *5 (D. Colo. Sept. 24, 2019) (holding that it would be "unreasonable for this Court to find that all of the supplies handled by Plaintiffs [who worked as domestic cleaners] were manufactured in Colorado, and that they at no time ever moved in interstate commerce"); *Solis v. La Familia Corp.*, No. 10-CV-2400-EFM-GLR, 2013 WL 589613, at *4 (D. Kan. Feb. 14, 2013) ("[u]sing' goods or materials which have moved in interstate commerce constitutes a 'handling' within the meaning of 29 U.S.C. § 203"); *see also Montavlo v. Tower Life Bldg.*, 425 F.2d 1135, 1143 (5th Cir. 1970) (discussing enterprise coverage and stating that even "employees who regularly send or receive interstate communications" are engaged in commerce); *Polycarpe v. E & S Landscaping Service, Inc.*, 821 F.Supp.2d 1302, 1307 (S.D. Fla. 2011) (trucks used by employees of landscaping company qualified as materials moved in interstate commerce, thus triggering enterprise coverage).[3] In addition, Plaintiffs' job duties as Wireline Engineers working in various states for Defendants also meets individual coverage under the FLSA. *See Reagor v. Okmulgee Cty. Fam. Res. Ctr.*, 501 F. App'x 805, 809 (10th Cir. 2012).

    As such, it should be undisputed that the FLSA applies to Defendants and protects Plaintiffs.

---

[3] Moreover, MBI has previously be held liable for FLSA violations at the summary judgment stage. Therefore, enterprise coverage cannot be seriously disputed by Defendants. *See, e.g., Wilkinson*, 297 F. Supp. 3d at 991.

**B. MBI Cannot Establish Any of Its Affirmative Defenses.[4]**

**1.      The Primary Duty Test.**

To qualify as an exempt administrative or executive employee, an employee's *primary duty*— that is, "the principal, main, major or most important duty that the employee performs"— must be the performance of exempt work. 29 C.F.R. § 541.700(a). The "determination of an employee's primary duty must be based on all the facts in a particular case, with particular emphasis on the character of the employee's job as a whole." *Id.* The regulations provide a nonexhaustive list to be considered in making this determination:

- The relative importance of the exempt duties as compared with other types of duties;

- The employee's relative freedom from direct supervision;

- The relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee; and

- The amount of time spent performing exempt work.

*Id.* The amount of time an employee spends doing exempt versus non-exempt work is an important factor in determining whether the employee qualifies under the executive exemption of the FLSA. *See e.g.*, *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 335 (5th Cir. 2017) ("we should consider the amount of time the employee devotes to particular duties, as well as the significance of those duties"). Courts first determine an employee's primary duty and then determine whether that primary duty disqualifies the employee from the FLSA's protections. *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 827 (10th Cir. 2012). The determination of which duty is the primary duty is a factual question. *Id.* at 828. In

---

[4] Based on their Answer, MBI is claiming the executive, administrative, highly compensated, Motor Carrier Act, and good faith affirmative defenses. *See* **Ex. 15**, Answer at pg 7.

making this determination the employee's job title is "of no determinative value." *Barth v. Wolf Creek Nuclear Operating Corp.*, 125 F. Supp. 2d 437, 439 (D. Kan. 2000).

### a. Wireline Engineers' Primary Duties Are Non-Exempt

Here, the record demonstrates Plaintiffs' primary duties were not exempt work. Plaintiffs spent almost **all their working time** performing hard labor on the wellsite, such as rigging up and rigging down job sites, running tool strings in and out of the wells, building gun switches, cleaning the job sites and tools, operating the wireline truck winch (part of the wireline process), and otherwise helping Wireline Operators throughout the job site during the well completion process. SUMF ¶ 26. This job required Plaintiffs to frequently crawl, bend, squeeze into tight spaces, climb on to tall heights, move around the job site as necessary, and routinely carry oilfield equipment or materials that weigh up to 400 pounds. SUMF ¶ 27. While doing this work, Plaintiffs were bound by company-created Standard Operating Procedures ("SOPs") from which they could not deviate without facing disciplinary action. SUMF ¶¶ 30, 32. While at the job site, Plaintiffs were required to call their supervisors if anything out of the ordinary occurred or any issues arose from the job site. SUMF ¶¶ 31, 34. Simply put, without this physical, technical, and manual work, MBI's wireline processes would not be completed. SUMF ¶¶ 33. Plaintiffs worked in all types of weather conditions, from rain, sleet, snow, or heat—generally whatever the weather they worked. SUMF ¶ 35. MBI provided Plaintiffs with several forms of personal protective equipment because the job sites are dangerous, such as hard hats, impact gloves, fire retardant pants, and ice cleats. SUMF ¶¶ 37.

What Plaintiffs could not do or did not do is also telling. Plaintiffs did not perform traditional management duties such as hiring, firing, formal disciplining, or interviewing employees. SUMF ¶¶ 38. Plaintiffs themselves could not discipline employees. SUMF ¶ 39. In the event additional equipment was needed on the job site, Plaintiffs could not negotiate prices—they followed a set price

list established by the company. SUMF ¶ 40. Plaintiffs did not perform other typically exempt duties, such as formulating management policies, handling employee grievances or complaints, or setting or adjusting rates of pay for other employees. SUMF ¶¶ 41-43. MBI did not give Plaintiffs any SOPs related to management or human resources, only SOPs relating to the technical aspects of performing wireline work. SUMF ¶¶ 30, 35. Plaintiffs did not create the "wireline plan" for the job site or client as MBI or its client created that plan before Plaintiffs even arrived at the job site. SUMF ¶ 28. Plaintiffs would record routine data from the well completion process and provide this information to upper management. SUMF ¶ 29.

MBI has no records tracking the amount of time a Wireline Engineer is operating wellsite equipment. SUMF ¶¶ 48-49. MBI could not state whether Wireline Engineers controlled quality of work or were doing the work themselves. SUMF ¶ 50.

When broken into their weekly amounts, Wireline Engineers' weekly salaries generally ranged from $1,538 (for $88,000 salary), $1,730 (for $90,000 salary), $2,115 (for $110,000), and even $2,307 (for $120,000 salary). SUMF ¶ 52. In other words, a Wireline Operator's base compensation can be more or about the same as the Wireline "Engineers" who are supposed to be above him:

| Position | Sample Weekly Schedule | Pay Rate (Average). Rates between $19 to $27 per hour (SUMF ¶ 53) | Regular Earnings | OT Earnings | Weekly Earning (excluding commission) |
|---|---|---|---|---|---|
| Wireline Operator (SUMF ¶ 53) | 7 days x 12 Hours for 84 hours | $23 | $920.00 ($23 x 40 hours) | $1,518.00 ($34.5 x 44 OT hours) | $2,438.00 |
| Wireline Operator | 6 Days x 12 Hours for 72 hours | $23 | $920.00 ($23 x 40 hours) | $1,104.00 ($34.5 x 32 OT hours) | $2,024.00 |

### C. MBI Cannot Prove the Executive Exemption Applies to Plaintiffs.

To qualify as an exempt executive, an employee must: (1) earn $455 per week or more, (2) "customarily and regularly direct[] the work of two or more employees," (3) have "management of the enterprise" as their "primary duty," and (4) have the authority to hire or fire employees, or make suggestions as to hiring and firing that are given "particular weight." 29 C.F.R. § 541.100(a); *see also Chambers v. Sodexo, Inc.*, 510 F. App'x 336, 339 (5th Cir. 2013). Here, MBI will be unable to establish any elements of the executive exemption.

MBI cannot show Plaintiffs' "primary duty" was management of the enterprise because their primary duties were routine manual, physical, technical job duties related to the well perforation services MBI sold its customers. *See supra* Section IV(B)(1)(a). This is not work related to the "management of the enterprise." *See* U.S. DOL Fact Sheet #17I: Blue-Collar Workers and the Part 541 Exemptions (available at https://www.dol.gov/whd/overtime/fs17i_blue_collar.pdf) ("The Exemptions provided by FLSA Section 13(a)(1) **do not apply** to manual laborers or other 'blue-collar' workers who perform work involving repetitive operations with their hands, physical skill and energy.") (emphasis added).

Moreover, Plaintiffs were not free from direct supervision. *See, e.g., Dewan*, 858 F.3d at 339 (5th Cir. 2017) (citing 29 C.F.R. § 541.704) ("there is no exemption if employees simply apply well-established techniques or procedures described in […] sources within closely prescribed limits") (internal citation omitted); *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 923 (E.D. La. Apr. 2, 2009) (holding that the plaintiff did not have freedom from direct supervision where he was closely supervised by his store manager and constrained by the corporate directives). Furthermore, the comparison of pay between Wireline Engineers and Wireline Operators (*supra*) supports a finding that

management is not their primary duties. *See, e.g.*, 29 C.F.R. § 541.700; *Marzuq v. Cadete Enterprises, Inc.*, 807 F.3d 431, 444 (1st Cir. 2015).

This case is like *Masterson v. Tucker Energy Servs., Inc.* where the Western District of Texas denied the employer's motion for summary judgment despite the employer's argument that the plaintiff was the "first-line manager responsible for ensuring that wireline cased hold services are performed safely and efficiency." No. SA-16-CA-749-OLG-HJB, 2018 WL 5733188, at *4 (W.D. Tex. Aug. 28, 2018), adopted, No. CV SA-16-CA-749-OLG, 2018 WL 5733157 (W.D. Tex. Sept. 25, 2018). Rather, the plaintiff summarized his most important duty as "[my] job was to operate the wireline truck." 2018 WL 5733188, at *1. This testimony tended to show his "'principal value' to [defendant] was in operating the wireline truck rather than managing others." *Id.* Like in *Masterson*, Plaintiffs' principal value to MBI was not their 'management acumen,' but was their ability to perform the wireline work and finish jobs. That was not exempt executive work.

Likewise, MBI will be unable to demonstrate Plaintiffs, as part of their *primary duties*, hired or fired, or made recommendations for hiring or firing. *See supra* section IV(B)(1)(a). Even if MBI could show Plaintiffs occasionally offered opinion about a coworker, such occurrence does not rise to the level required by the regulations. *See* 29 C.F.R. § 541.105 ("[Particular weight] does not include an occasional suggestion with regard to the change in status of a co-worker."). MBI cannot point to MBI's employee referral program as evidence that Plaintiffs recommended individuals for hire. That program was open to employees companywide wherever additional staffing was needed and was not exclusive to the Wireline Engineer position. SUMF ¶ 25. Moreover, "referring" a potential employee did not significantly impact that person's chances of being hired (much less amount to an actual hire).

As a result, MBI cannot meet its burden to show the executive exemption applies to Plaintiffs.

### D. MBI Cannot Prove the Administrative Exemption Applies to Plaintiffs.

MBI cannot show Plaintiffs were exempt administrators. To qualify for this exemption, MBI must prove:

(1) The employee is compensated on a salary basis of not less than $455 per week;

(2) The employer's primary duty is "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and

(3) The employee's primary duties include the "exercise of discretion and independent judgment with respect to matters of significance."

29 C.F.R. § 541.200. Here, MBI cannot overcome its burden of proving that Plaintiffs fall into the second and third prongs of the exemption.

### 1. MBI cannot show Plaintiffs' primary duty is not production.

An employee who qualifies for the administrative exemption must participate in "administering the business affairs of the enterprise" rather than "producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market." *See Dewan*, 858 F.3d at 336–37. Work directly related to management policies or general business operations consists of "those types of activities relating to the administrative operations of a business as distinguished from 'production.'" 29 C.F.R. § 541.205(a); *see also Dewan*, 858 F.3d at 336–37 (the exemption does not apply when one is "producing the 'commodity' of the business.").

MBI will be unable to demonstrate the administrative exemption applies to Plaintiffs because their primary duties consist of manual and repetitive work directly related to producing MBI's service: completing wireline services at well sites. *See supra* IV(B)(1)(a). As outlined above, Plaintiffs could not and did not perform hallmark administrative duties such as setting employee rates of pay, formulating management policies, handling employee grievances or complaints, or otherwise creating management

policies. *See supra* IV(B)(1)(a). Further proof that their more important job duties were those of performing wireline work is that MBI only provided SOPs related to the technical aspects of the job (i.e. – how to perform wireline services) as opposed to SOPs relating to how to be a manager or how to handle other administrative tasks outlined by the regulations. *Id.*

The fact that Plaintiffs' principal job duties relate more to the wireline services provided by MBI than general business operations demonstrates that the administrative exemption cannot apply. In *Smith v. Frac Tech Servs., LLC*, the court granted the plaintiff's motion for summary judgment and held the administrative exemption inapplicable to oilfield field engineers who directly participated in the fracturing jobs, which was Frac Tech's principal service. *See* No. 4 Civ. 00679 (JLH), 2011 WL 96868, at *22 (E.D. Ark. Jan. 11, 2011) (emphasis added). Without examples and evidence that Plaintiffs provided policy determinations for how a business should be run or be run more efficiently, their duties are production and therefore nonexempt. *See Hobbs v. EVO Incorporated*, 7 F.4th 241, 256 (5th Cir. 2021); *see also Dewan*, 858 F.3d at 338 (reversing district court's summary judgment on administrative exemption to mud engineers); *Espinosa v. Stevens Tanker Division, LLC*, No. 15 Civ. 897 (XR), 2017 WL 6021861, at *4 (S.D. Tex. Dec. 5, 2017) (denying the employer's motion for summary judgment because the employee's claims could be production rather than administrative); *Elliott v. Drill-Quip, Inc.*, No. 14 Civ. 1743, 2015 WL 7302764 (S.D. Tex. Nov. 18, 2015) (denying the employer's summary judgment as to whether manufacturing engineer's primary duty was directly related to management or general business operations).

### 2. MBI cannot show Plaintiffs exercised independent judgment related to matters of significance.

"The term 'matters of significance' refers to the level of importance or consequence of the work performed." 29 C.F.R. § 541.202(a). Factors to consider are and include:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b). "An employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly." 29 C.F.R. § 541.202(f).

As explained above, Plaintiffs were required to operate under strict guidelines and procedures determined by MBI's top management and SOPs. *See supra* section IV(B)(1)(a). Applying well-established techniques or procedures do not meet the administrative exemption requirement. *See Dewan*, 858 F.3d at 340. Moreover, Plaintiffs were tied to set price lists when equipment was needed on the job site and were also required to immediately report any issues on location to management or face disciplinary action, which further supports a finding that they could not exercise the requisite independent judgment. SUMF ¶¶ 31, 32, 40. Like in *Dewan*, MBI cannot show Plaintiffs were given authority to "formulate, affect, interpret, or implement management policies or operating practice." 858 F.3d at 340.

As such, the administrative exemption does not apply to Plaintiffs.

**E.  MBI Cannot Prove the Highly Compensated Exemption Applies to Plaintiffs.**

Given the blue-collar nature of Plaintiffs' jobs, MBI cannot establish the so-called Highly Compensated Exemption ("HCE") applies either. The HCE contains an important exception to its "relaxing" of the "duties" requirement for application of a white collar exemptions:

> The highly compensated employee exemption has its own exception for "blue-collar" workers, as the exemption applies only to employees who primary duty includes performing office or non-manual work. Thus . . . employees who perform work involving repetitive operations with their hands, physical skill and energy are not exempt under this section no matter how highly paid they might be.

*Hobbs v. EVO Inc.*, 394 F. Supp. 3d 717, 745 (S.D. Tex. 2019), *aff'd*, 7 F.4th 241 (5th Cir. 2021). Here, like in *Hobbs*, Plaintiffs' primary job duties are those involving repetitive operations with their hands, physical skill, and energy. *See supra* Section IV(B)(1)(a). A cursory review of the SOPs provided to Plaintiffs demonstrates exactly how manual, technical, and repetitive their jobs were. *See* **Exhibit 27**, SOP Samples. As a result, the HCE cannot apply to Plaintiffs regardless of their total compensation. *Hobbs*, 394 F. Supp. 3d at 745; *Guyton v. Legacy Pressure Control*, No. 15 Civ. 1075 (RCL), 2017 WL 244868, at *2 (W.D. Tex. Jan. 18, 2017) (denying employer's motion for summary judgment and stating "[i]f an employee's primary duty is manual labor, the [HCE] does not apply, regardless of how much they are paid").

**F.  MBI Cannot Prove the Motor Carrier Act Applies, and Specifically, That the "Small-Vehicle Exception" to the MCA Does Not Apply.**

Even if Defendants could establish the requirements of the Motor Carrier Act ("MCA") exemption to the FLSA, Plaintiffs would still be protected by the FLSA as a result of the SAFETEA-LU Technical Corrections Act ("TCA") of 2008, Pub. L. No. 110-244, 122 Stat. 1572, 1620. Often referred to as the "small vehicle exception," the TCA makes the FLSA applicable to employees who work with vehicles weighing 10,000 pounds or less **regardless** of whether the MCA exemption might

otherwise apply. *See, e.g., Allen v. Coil Tubing Servs., L.L.C.*, 846 F. Supp. 2d 678, 692-93, 704 (S.D. Tex. 2012). As an affirmative defense, it is the employer's burden to show that the MCA applies. *See, e.g., Crookston v. Doctor's Inc.*, No. 16-2071-JTM, 2017 WL 2439374, at *3 (D. Kan. June 6, 2017). Although the Tenth Circuit has not specifically ruled who carries the burden to demonstrate the TCA's small vehicle exception applies, the plain language of the TCA places the burden on the employer. *See, e.g., Crookston*, 2017 WL 2439374, at *3 (D. Kan. June 6, 2017) ("The burden lies with the employer to establish that . . . the TCA does not apply."); *Warner v. Pro Wireline, Inc.*, No. 2:16-CV-0226-SWS, 2017 WL 3457119, at *4 (D. Wyo. June 21, 2017) ("The employer bears the burden of establishing a claimed exemption under the FLSA, including that the small vehicle exception to the [MCA] does not apply"); *Wilkinson*, 297 F. Supp. 3d at 995 ("In the case of the MCA exemption, the TCA amendments do not alter the burden which remains on the employer.").[5] Placing the burden on MBI to prove an "exception to the exception" is in line with the Tenth Circuit's decision in *Fowler v. Incor.* 279 F.App'x 590, 597 (10th Cir. 2008) ("Further, even if § 552.6 was an exception, the employer would still bear the burden of proof.").

An employee's work with "small vehicles" need only be "more than *de minimis* to fall under the exception." *Butler v. TFS Oilfield Services, LLC*, No. 16-CV-01150-FB, 2019 WL 177304, at *4 (W.D. Tex. Jan. 11, 2019). In essence, "if more than a *de minimis* portion of [an employee's] work involved vehicles of 10,000 pounds or less, the exception can apply." *Masterson*, 2018 WL 5733188, at *4. "*De minimis* work is work that is trivial, casual, and insignificant and has no direct effect on the safety of

---

[5] Only the Fifth Circuit has held the burden is on the employee to prove they fall into the TCA. *See Carley v. Crest Pumping Techs., LLC*, 890 F.3d 575, 579 (5th Cir. 2018). No court in the Tenth Circuit has followed *Carley* on this point. We submit *Carley*'s holding incorrectly places the burden on plaintiffs to disprove the absence of an employer's affirmative defense. *See Taylor v. C&L Towing & Transp., LLC*, No. 6:17-CV-1929, 2019 WL 10984240, at *5 (M.D. Fla. Oct. 8, 2019) (calling *Carley*'s rationale into question by explaining "[t]he MCA is an affirmative defense, and the TCA affects the scope of that affirmative defense").

operation of motor vehicles." *Wilkinson*, 297 F. Supp. 3d at 995; *Berry v. Best Transportation, Inc.,* No. 4:16-CV-00473, 2018 WL 6830097, at *7 (E.D. Mo. Dec. 27, 2018) (applying TCA to mixed-fleet).

MBI cannot show the TCA does not apply to Plaintiffs and previously lost this exact issue in *Wilkinson v. High Plains Inc.*, 297 F. Supp. 3d 988, 996 (D.N.D. 2018). MBI did not change its truck fleet to ensure the TCA would not apply. In *Wilkinson*, the court held that "[t]he majority of the pickup trucks in the Defendants' fleet have a gross vehicle weight rating of 10,000 pounds or less." *Id.* at 992. In doing so, the court relied upon the truck list attached to the SUMF as **Exhibit 31,** Wilkinson Truck List (annotation done by counsel).

| BI | | Model/Description | VIN Number | Area | Group | Actual | GVWR | |
|---|---|---|---|---|---|---|---|---|
| PI24 | 2004 FORD | F-250 4x4 SD Crew 15 | 1FTNW21P04ED98377 | Belfield | Reserve | 6019 | 8800 | |
| 004 | 2007 FORD | F-150 SuperCrew 4x4 | 1FTPW14V67KD41488 | Killdeer | Shop | 5512 | 7200 | |
| 006 | 1999 CHEV | K3500 4WD 159.5 CC | 1GBJK34R1XF091221 | Nunn | Shop | 5492 | 12000 | |
| 011 | 2009 CHEV | Silverado 3500HD 4x4 Cr | 1GCJK93629F183107 | Greeley | Oil | 7673 | 11400 | |
| 109 | 2009 CHEV | Silverado 2500HD 4x4 EC | 1GCHK49K49E100790 | Belfield | Mtnc. | 6978 | 9200 | |
| 114 | 2006 GMC | Sierra 3500 4x4 Crew C/C | 1GDJK33D96F204649 | Belfield | Flatbed | 6543 | 11400 | |
| 121 | 2001 FORD | F-450 SD RC C/C 4x4 | 1FDXF47F51EC02556 | Ross | Shop | 6298 | 15000 | |
| 122 | 2005 CHEV | Silverado 2500HD 4x4 Cr | 1GCHK23215F873766 | Belfield | Flatbed | 5760 | 9200 | |
| 140 | 2008 FORD | E-350 SD Wagon | 1FBNE31L48DB41258 | Belfield | T/C | | | |
| 141 | 2009 CHEV | Silverado 1500 4x4 EC 1 | 1GCEK29019Z152604 | Watford | FLC | 5263 | 7200 | |
| 148 | 2009 CHEV | Silverado 1500 4x4 Crew | 3GCEK23339G259463 | Watford | Water | 5348 | 7300 | |
| 150 | 2011 CHEV | Silverado 1500 4x4 Crew | 3GCPKTE2XBG197665 | Belfield | Sales | 5372 | 7300 | |

This matters for *this* case because many of the Plaintiffs here are identified in the *Wilkinson* truck list as using pickup trucks with GVWRs of 10,000 pounds or less. *See* **Ex. 31**, Wilkinson List.[6]

For instance, Plaintiff Tim Warren is identified in the *Wilkinson* truck list as being assigned to truck number P714.

| P714 | 2014 | FORD | F-350 4x4 SD Crew 15 | Warren, Tim |
|---|---|---|---|---|

**Ex. 31**, Wilkinson list at pg. 11. The GVWR provided by MBI is 10,000 pounds:

---

[6] For the convenience of the Court, we have highlighted and added names in red identifying Plaintiffs.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| P713 | 2014 | FORD | F-350 4x4 SD Crew 156 | 1FT7W2BT0EEA72861 | Casper | Wireline | 6589 | 10000 |
| P714 | 2014 | FORD | F-350 4x4 SD Crew 156 | 1FT8W3BT6EEA38479 | Casper | Wireline | 6979 | 10000 |
| P715 | 2014 | FORD | F-350 4x4 SD Crew 156 | 1FT8W3BTYEEA59285 | Casper | Wireline | 6979 | 10000 |

*Id.* at pg 8. Truck lists produced by MBI for this litigation do not specifically identify any different truck assigned to Mr. Warren. *See* **Ex. 32**, Warren List. Indeed, Mr. Warren's name only appears on a 2015 truck list that provided a truck number, but no further information. *Id.* at pg 8. However, Mr. Warren's assigned truck from *Wilkinson* still exists in MBI's inventory:

| 1FT8W3BT6EEA38479 | Shop-FlatBed | 7633P |
|---|---|---|

**Ex. 32**, Warren Truck List at pg 3. Therefore, it remained in MBI's fleet.

Other Plaintiffs in this case used trucks identified in the *Wilkinson* case as well. Specifically, by finding Plaintiffs identified in MBI's *Warren* truck lists and searching their assigned truck VIN numbers in the *Wilkinson* list, one sees that the fleet is largely the same. For instance, although Ryan Sutton is not identified by name in *Wilkinson*, his assigned truck's VIN is found in the *Wilkinson* truck list:

**Ex. 32**, Warren Trust List at pg 1:

| 1FT8W3BT2EEB12934 | 00347 | Ryan Sutton |
|---|---|---|

**Ex. 31**, Wilkinson List at pg 9:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| P746 | 2014 | FORD | F-350 4x4 SD Crew 156 | 1FT8W3BT0EEB26107 | Dickinson | Wireline | 6979 | 10000 |
| P747 | 2014 | FORD | F-350 4x4 SD Crew 156 | 1FT8W3BT2EEB12934 | Dickinson | Wireline | 6979 | 10000 |
| P748 | 2014 | FORD | F-350 4x4 SD Crew 156 | 1FT8W3BT9EEA92147 | Dickinson | Wireline | 6979 | 10000 |

Another example is Tom Miller:

**Ex. 32**, Warren list at pg 3:

| 2014 Ford F350 Crew Cab | 11300 | 86 | P754 W | 1FT8W3BT7EEB42236 | Tom Miller |
|---|---|---|---|---|---|

**Ex. 31**, Wilkinson list at pg 9:

| 2014 | FORD | F-350 4x4 SD Crew 156 | 1FT8W3BT7EEB42236 | Dickinson | Wireline | 6979 | 10000 |
|---|---|---|---|---|---|---|---|

17

Conveniently for MBI, their incomplete *Warren* list lists GVWRs of over 10,000 pounds for some of these vehicles after losing on the TCA issue in *Wilkinson*. However, MBI did not do a specific purging or removal of pickup trucks after the *Wilkinson* decision. SUMF ¶ 56.

Nevertheless, the *Warren* trust lists also reveals that newer model trucks (such as 2017 and 2018) are 2500-level models, smaller vehicles than the 350's identified primarily in *Wilkinson*.

| | | | | | | |
|---|---|---|---|---|---|---|
| 2017 Chevy 2500 | | | P793 | No | 1GC1KUEY9HF239849 | Shop |
| 2017 Chevy 2500 | | | P798 | | 1GC1KUEY8JF112029 | Ross Wright |
| 2018 Chevy 2500 | | | P800 | | 1GC1KUEY8JF113018 | Rex Foster |
| 20018 Chevy | | | P814 | No | 1GC1KUEG7JF271082 | Shop |
| 2018 Chevy 2500 Crew | | | P815 | No | 1GC1KUEG6JF273146 | Matt Bohn |
| 2018 Chevy 2500 Crew | | | P816 | No | 1GC1KUEG6JF275009 | Travis Bell |

**Ex. 32**, Warren Truck List at pg 3.

In sum, out of 37 Plaintiffs:

- 10 Plaintiffs are either identified in the *Wilkinson* list, or have been linked to trucks with VIN found on the *Wilkinson* list;

- 2 Plaintiffs were identified as assigned to 2018 Chevy 2500 trucks;[7] and

- MBI provided no specific documentation or records demonstrating the specific pickup truck vehicles assigned to 25 Plaintiffs. *See* **Ex. 32**, Warren Truck List at pg. 16-17.

Despite the lacking records, it is clear MBI utilized a "mixed fleet" whereby some work vehicles weigh over 10,000 GVWR, but also, pick-up trucks assigned to Plaintiffs or spare trucks used by Plaintiffs were at or below 10,000 GVWR. It is undisputed MBI does not have records tracking the usage of spare trucks. SUMF ¶ 58. Because MBI cannot show Plaintiffs drove or rode in small vehicles for only a '*de minimis*' portion of their employment, summary judgment should be granted to Plaintiffs. *See, e.g.*, *Wilkinson*, 297 F.Supp.3d at 992; *Carlton v. JHook Investments, Inc.*, No:17-CV-00076

---

[7] *See Gowey v. True Grip & Lighting, Inc.*, 520 F. Supp. 3d 1013, 1019 (E.D. Tenn. 2021) (citing cases holding F-250s and the like fall at or below the weight of 10,000 pounds).

KGB, 2019 WL 4784801, at *17 (E.D. Ark. Sept. 30, 2019) (granting summary judgment to employee who drove vehicles with a GVWR of 10,000 pounds or less despite employer stating such drive time was "infrequent"); *Crookstone*, 2017 WL 2439374, at *3 (denying employer's summary judgment motion because plaintiffs drove pickup trucks for more than half of their employment); *Bracamontes v. Bimbo Bakeries USA Inc.*, No. 15-CV-02324-RBJ, 2017 WL 3190740, at *4 (D. Colo. July 14, 2017) (denying employer's summary judgment where questions remained regarding employers' evidence of truck weight); *Childress v. Ozark Delivery of Missouri L.L.C.*, 95 F. Supp. 3d 1130, 1137 (W.D. Mo. 2015) (granting summary judgment to plaintiffs where employer failed to present any information regarding the extent of time plaintiffs operated pickup trucks weighing 10,000 pounds or less).

### G. Summary Judgment is Appropriate on MBI's Good Faith Defense.

The FLSA provides than an employer that violates the FLSA "is ordinarily liable for both unpaid wages and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b); *Doty v. Elias*, 733 F.2d 720, 725 (10th Cir. 1984). Because the employer's burden "is a difficult one to meet … double damages are the norm, single damages the exception." *Koellhoffer v. Plotke-Giordani*, 858 F.Supp.2d 1181, 1192 (D. Colo. Mar. 12, 2012). A court is required to award liquidated damages unless an employer meets its "substantial burden" of showing its actions were taken in good faith and based on objectively reasonable grounds. *Renfro v. City of Emporia, Kan.,* 948 F.2d 1529, 1540 (10th Cir. 1991). The employer must have "honesty of intention and no knowledge of circumstances which ought to put him upon inquiry." 29 C.F.R. § 790.15(a). The good faith defense is not available where an employer had knowledge of conflicting rules and simply chose to act in accordance with the one most favorable to him. 29 C.F.R. § 790.15(d).

MBI will be unable to demonstrate good faith. First, any reliance upon a due diligence memo obtained in 2011 when HPI was acquired by MBI is insufficient, as it does not discuss or otherwise

identify wage and hour audits or evaluations. MSUMF ¶ 59; **Ex. 33**, Due Diligence Memo. Moreover, despite various FLSA lawsuits, including *Wilkinson* that specifically found overtime violations for Wireline Engineers' coworkers, MBI at no time underwent any study of Wireline Engineers' exemption status or any studies to ensure their duties were actually exempt. MSUMF ¶ 49, 61. Such conduct does not meet the "substantial burden" of showing actions taken in good faith with objective reasonableness. *See, e.g.*, *Johnson*, 604 F. Supp. at 926 ( misclassification case stating the "failure to conduct studies or surveys to ascertain whether all of its ASMs were actually performing managerial duties left open the distinct possibility that ASMs were misclassified . . . Big Lots should have been more proactive in finding out what was actually going on on the ground"); *Bolick v. Mgmt. by Skylane, LLC*, No. H-07-2261, 2008 WL 4589961, at *2 (S.D. Tex. Oct. 14, 2008) (an employer must provide evidence of "specific" and "ongoing" efforts to comply with the FLSA).

## V.   CONCLUSION

The FLSA presumes and requires that all employees under its protections receive overtime pay for overtime hours worked. MBI is not able to meet its burden of proof on its affirmative defenses and show that Plaintiffs fall into the FLSA exemptions. As a result, the Court should grant summary judgment to Plaintiffs on liability.

Dated: January 28, 2022

/s/ Armando A. Ortiz

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Armando A. Ortiz
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch
11Greenway Plaza #3025
Houston, Texas 77046
Telephone: (713) 877-8788

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing using the Court's CM/ECF filing system, which will send a true and correct copy to all counsel of record.

/s/ Armando A. Ortiz

21