## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-800-RM-STV

**Timothy Warren**,
individually and on behalf of all others similarly situated,

      Plaintiff,

v.

**MBI Energy Services, Inc.**;
**Missouri Basin Well Service, Inc. d/b/a MBI Energy**; and
**High Plains Inc.**,

      Defendants.

_____

### DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON LIABILITY

_____

## INTRODUCTION AND SUMMARY

Defendants, MBI Energy Services, Inc., Missouri Basin Well Service, Inc. d/b/a MBI Energy, and High Plains, Inc. (collectively, "MBI") respectfully request this Court deny the motion for summary judgment on liability filed by Plaintiff Timothy Warren and the 36 opt-in Plaintiffs (collectively, "Plaintiffs").

MBI employed Plaintiffs as Wireline Engineers.  In that position, Plaintiffs supervised Wireline crews and acted as the face of the company to customers.  MBI properly classified Plaintiffs as exempt from the overtime compensation requirements under the Fair Labor

4673607.4

Standards Act ("FLSA"), 29 U.S.C. § 201, and acted in good faith in making that classification. Plaintiffs' motion should be denied.

<strong><u>STATEMENT OF UNDISPUTED MATERIAL FACTS</u></strong>

Pursuant to Section IV of the Court's Civil Practice Standards, a Statement of Undisputed Materials Facts is filed as a separate docket entry.

<strong><u>LAW AND ARGUMENT</u></strong>

Summary judgment is only appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Janny v. Gamez*, 8 F.4th 883, 898 (10th Cir. 2021) (citations omitted). In applying this standard, the Court must "constru[e] all facts and reasonable inferences in a light most favorable to the nonmoving party." *Welding v. Bios Corp.*, 353 F.3d 1214, 1217 (10th Cir. 2004) (citations omitted).

**I.** **<u>Summary judgment is improper on the Plaintiffs' FLSA claims because genuine issues of material fact exist regarding the application of several exemptions.</u>**

The FLSA generally requires employers to provide overtime pay to employees who work more than forty hours in a given week. 29 U.S.C. § 207(a). But the FLSA also provides numerous exemptions to the overtime rules. *Id.* § 213. Although courts previously construed such exemptions "narrowly" against the employer, the Supreme Court has since instructed "that courts should apply a 'fair reading' to the exemptions." *Holt v. City of Battle Creek*, 925 F.3d 906, 909 (6th Cir. 2019) (quoting *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134,

2

1142 (2018)).  In this case, genuine issues of material fact exist regarding whether Plaintiffs fall under a fair reading of four such exemptions: (1) the executive exemption, (2) the administrative exemption, (3) the highly compensated exemption, and (4) the Motor Carrier Act ("MCA") exemption.  Thus, summary judgment is inappropriate.

### A.  Genuine issues of material fact exist regarding whether Plaintiffs fall under the Executive Exemption to the FLSA's overtime requirements.[1]

The FLSA exempts from its overtime requirements "any employee employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1).  An employee is an exempted "executive" if (1) their salary is at least $455 per week, (2) their "primary duty" is management, (3) they "customarily and regularly direct the work of two or more other employees," and (4) they have "the authority to hire or fire other employees" or if their "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a).  Plaintiffs assert "MBI will be unable to establish any elements of the executive exemption."  MBI disagrees; at a minimum, genuine issues of material fact exist as to these elements.

MBI easily establishes the first element regarding salary.  The base salary for a Wireline Engineer was approximately $100,000.  SUMF ¶¶ 21, 52.  MBI similarly establishes the third element with ease, as Plaintiffs supervised teams of at least two other people, but usually more.  OSUMF ¶ 63.

---

[1] MBI agrees it bears the burden for the executive, administrative, and highly compensated exemptions.

As for the second element, Plaintiffs' "primary duty" was "management."  29 C.F.R.

§ 541.100(a)(2).  Management is broadly defined to include activities such as:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

*Id.* § 541.102.

"[T]he question of which duty is the 'primary duty' is a question of fact."  *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 828 (10th Cir. 2012).  With that question, no rigid formula applies for determining primary duty.  Instead, this fact-intensive inquiry focuses "on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  29 C.F.R. § 541.700.  "Time spent performing each duty is a 'useful guide' in examining which duty is primary, but there is no requirement that an exempt executive employee spend more than half her time on managerial tasks."  *Maestas*, 664 F.3d at 827.

Looking at the Wireline Engineer position, the record supports that the primary duty was management.  OSUMF ¶¶ 62-66.  At root, Plaintiffs were the face of the company, responsible for managing customer relations.  OSUMF ¶¶ 44, 65-66.  In that role, Plaintiffs

exercised great discretion and were required to make immediate project decisions.  OSUMF ¶¶ 65-66.[2]  Naturally, this important role included management features.

Throughout projects, Plaintiffs planned, prepared, and coordinated well-site operations. OSUMF ¶¶ 65; *see also* 29 C.F.R. § 541.102 ("planning the work").  Plaintiffs directed and supervised the work of the crew (including operators) on the well-site location, as well as trained those crews.  OSUMF ¶¶ 63-65; *see also* 29 C.F.R. § 541.102 ("directing the work"). More specifically, Plaintiffs directed work to ensure quality of services and to promote safety. OSUMF ¶ 65.  Plaintiffs were "safety leaders," responsible for providing for the safety and security of the crew on location.  *Id.*; *see also* 29 C.F.R. § 541.102 ("providing for safety and security of the employees or the property").  They were skilled workers who determined the equipment to use and maintained that equipment.  OSUMF ¶ 65; *see also* 29 C.F.R. § 541.102 ("determining the type of . . . equipment . . . to be used").  Plaintiffs were also responsible for maintaining data on-site and submitting reports.  OSUMF ¶¶ 26, 65; *see also* 29 C.F.R. § 541.102 (maintaining "records for use in supervision or control").

Thus, MBI disagrees with Plaintiffs' assertion that their primary duties were "hard labor" rather than management.  To be sure, the well-site required some labor, but the Wireline Engineers' "primary duty" was overseeing (i.e. managing) that work. OSUMF ¶ 64.  MBI also disputes Plaintiffs' assertions that they were neither involved in the planning process nor had

---

[2] Plaintiffs assert they were bound by Standard Operating Procedures ("SOPs").  MBI disputes that fact and characterization.  Wireline Engineers were instead tasked with enforcing SOPs to ensure quality and safety, and they could deviate from those procedures when they deemed fit.  OSUMF ¶ 65.

authority to negotiate prices.  As noted above, Plaintiffs had considerable input on both.  MBI further disputes Plaintiffs' assertions that they were required to call supervisors for every incident; they had great leeway in the field.

Finally, Plaintiffs emphasize working in all weather conditions and wearing personal protective equipment ("PPE").  SOMF ¶¶ 36-37.  But that emphasis shows ignorance about the nature of the job site.  As an open-air well-site operation with dangerous conditions, everyone on-site wore appropriate PPE.  *Id.*  Whether a Wireline Engineer "fit[s] the popular image of a 'bona fide executive' . . . has nothing to do with the [management] criterion" for the exemption.  *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 565 (2d Cir. 2012).

Fact disputes also exist on the final element—whether Plaintiffs' suggestions for hiring, firing, and advancement were given "particular weight."  *See* 29 C.F.R. § 541.100(a)(4).[3] "[M]any different employee duties and levels of involvement can work to satisfy this fourth element."  *Madden v. Lumber One Home Ctr., Inc.*, 745 F.3d 899, 904 (8th Cir. 2014). Importantly, "suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status."  *Id.*

---

[3] Plaintiffs assert that MBI cannot satisfy this element because hiring and firing was not among their primary duties.  Plaintiffs, however, confuse the second and fourth element.  There are two *separate* inquiries: whether Plaintiffs' primary duty was management *and* whether their recommendations on employment matters were given particular weight.  *See* 29 C.F.R. § 541.100.

6

As Wireline Engineers, Plaintiffs were involved in the hiring, firing, and advancement process at MBI.  SUMF ¶ 38; OSUMF ¶ 67.  Plaintiffs did not have the authority themselves to hire or fire individuals.  But, as supervisors on-site, their recommendations for the operators and other crew members were given particular weight.  OSUMF ¶ 67.  Thus, summary judgment is inappropriate on the Executive Exemption as numerous factual disputes exist.[4]

### B.      Genuine issues of material fact exist regarding whether Plaintiffs fall under the Administrative Exemption to the FLSA's overtime requirements.

The FLSA also exempts from its overtime requirements employees who are employed in a "bona fide" administrative capacity.  29 U.S.C. § 213(a)(1); *see also* 29 C.F.R. § 541.200.  The Administrative Exemption includes the same salary requirement as the Executive Exemption.  As noted above, Plaintiffs easily satisfy that element.

The Administrative Exemption also requires the employee to have the "primary duty" of "non-manual work directly related to the management or general business operations of the employer or the employer's customers."  29 C.F.R. § 541.200(a)(2).  The employee's "primary duty" must "include[] the exercise of discretion and independent judgment with respect to matters of significance."  *Id.* § 541.200(a)(3).  Both elements are satisfied here.

First, as discussed at length above, a Wireline Engineer's *primary duty* was *management*.  OSUMF ¶ 64.  More specifically, Plaintiffs' primary duty was supervision and oversight of the Wireline crew.  OSUMF ¶¶ 64-65.  In that capacity, Plaintiffs acted as the face

---

[4] Interestingly, Plaintiffs cite cases where other courts found "genuine disputes" regarding primary duties for wireline field supervisors barred summary judgment.  *See, e.g.*, *Masterson v. Tucker Energy Servs., Inc.*, SA-16-CA-749, 2018 WL 5733188 (W.D. Tex. Aug. 28, 2018).  MBI agrees that similar genuine disputes bar summary judgment here.

of the company for the customer.  OSUMF ¶ 65-66.  Thus, at a minimum, a genuine issue of material fact exists on this second element.

Likewise, Plaintiffs exercised discretion and independent judgment in relation to matters of significance.  *See* 29 C.F.R. § 541.200(a)(3).  Once again, this third element requires a fact-intensive inquiry.  The following non-exclusive factors are instructive:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b).

Plaintiffs assert they lacked this requisite discretion because MBI issued SOPs.  Not so. Wireline Engineers were charged with *"implement[ing]"* and ensuring compliance with SOPs, which falls squarely within the type of activity that the Administrative Exemption anticipates. 29 C.F.R. § 541.202(b); *see also* OSUMF ¶ 65.  Moreover, Plaintiffs preformed important work that certainly "affect[ed] business operations to a substantial degree."  29 C.F.R. § 541.202(b).  Plaintiffs exercised their discretion and utilized their expertise in making immediate decisions on a regular basis.  OSUMF ¶ 66.  Of course, positions existed above

Wireline Engineers in the company hierarchy, but "employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." 29 C.F.R. § 541.202(c). Thus, fact questions preclude summary judgment on the Administrative Exemption as well.

      **C.**      **Genuine issues of material fact exist regarding whether Plaintiffs fall under the Highly Compensated Exemption to the FLSA's overtime requirements.**

Some highly compensated employees are also exempt from the FLSA requirements if their "primary duty includes performing office or non-manual work" and they perform "any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee." 29 C.F.R. § 541.601. Plaintiffs seemingly do not dispute that they were highly compensated, *see* SOMF ¶¶ 21, 52, but instead argue that the exception cannot apply to them "regardless of their total compensation" because of their duties. For the reasons stated above, MBI disagrees.

Plaintiffs' primary duty was management and supervision; that is, "non-manual work." OSUMF ¶¶ 33, 64-65. Plaintiffs' work focused on preparation, oversight, and customer relations, even if they participated in some skilled labor. *See Gilchrist v. Schlumberger Tech. Corp.*, No. 1:16-CV-8-LY, 2021 WL 6807579, at *4 (W.D. Tex. Dec. 15, 2021) (finding similar role satisfied the non-manual work element). Accordingly, summary judgment is inappropriate on this exemption as well.

**D.      Genuine issues of material fact preclude summary judgment on the MCA Exemption.**

Pursuant to the MCA Exemption, overtime requirements do not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service." 29 U.S.C. § 213(b)(1); *see also* 49 U.S.C. § 31502(b) (Secretary of Transportation has authority over private motor carriers); *id.* § 13102(15)(C) (defining private motor carrier). Put simply, the MCA exemption applies to commercial vehicle drivers[5] who drive a vehicle with a gross vehicle weight rating ("GVWR") of more than 10,000 pounds. *See Carley v. Crest Pumping Techs., LLC*, 890 F.3d 575, 582 (5th Cir. 2018); *McCall v. Disabled Am. Veterans*, 723 F.3d 962, 966 (8th Cir. 2013).

Plaintiffs seemingly do not contest that they are covered by the MCA exemption itself.[6] Thus, MBI will not belabor the point other than to note that Plaintiffs clearly fall within the MCA exemption as they (1) worked for MBI, a private motor carrier[7]; (2) maintained duties as drivers that affected the safety operations of motor vehicles in interstate commerce[8]; and

---

[5] This exemption similarly covers drivers' helpers and loaders.

[6] Should Plaintiffs belatedly challenge this finding, MBI requests an opportunity to respond.

[7] *See* SUMF ¶¶ 20, 55 (assigned pickups); OSUMF ¶¶ 68-70; *see also Leipolt v. All-ways Contractors, Inc.*, 2016 WL 2599125, at *3 (E.D. Wisc. May 5, 2016) (finding a contractor a motor private carrier due to DOT registration and requirement for drivers to possess a CDL).

[8] *See* SUMF ¶¶ 20, 55 (assigned pickups); OSUMF ¶¶ 68-70; *see also Deherra v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1159 n.5 (10th Cir. 2016) (accepting even minimal loads in interstate commerce).

10

(3) engaged in more than de minimis work on vehicles with a GVWR in excess of 10,000 pounds.[9]

Plaintiffs instead focus on the small vehicle exception to the MCA exemption, codified in Section 306 of the SAFETEA-LU Technical Corrections Act of 2008 ("TCA"). Pub. L. No. 110-224, 112 Stat. 1572 (2008). Pursuant to the small vehicle exception, overtime requirements may still apply to an employee who otherwise falls under the MCA exemption if that employee's "work, in whole or in part, . . . affect[s] the safety of operation of vehicles weighing 10,000 pounds or less." *Nelson v. FedEx Ground Package Sys, Inc.*, 2019 WL 1437765, at *3 (D. Colo. Feb. 8, 2019) (quoting *Schilling v. Schmidt Baking Co.*, 876 F.3d 596, 601 (4th Cir. 2017)). That exception does not apply here.

Importantly, Plaintiffs—not MBI—bear the burden to show that they fall within the small vehicle exception. While it does not appear that the Tenth Circuit has yet decided this issue, numerous courts have found that employees bear the burden to prove the small vehicle exception applies. *See, e.g.*, *Carley*, 890 F.3d at 579-80; *Gowey v. True Grip & Lighting, Inc.*, 520 F. Supp. 3d 1013, 1019 (E.D. Tenn. 2021); *Minor v. Cen. Forest Prods., Inc.*, No. 3:19-CV-01631, 2021 WL 1102437, at *15 (N.D. Ala. Mar. 23, 2021); *Noll v. Flowers Food Inc.*, 442 F. Supp. 3d 345, 363 (D. Me. 2020). This Court should make the same well-reasoned finding.

---

[9] This point, with related support, is discussed extensively below.

In an FLSA action, the burden always remains with the employees to show they are covered by the act and are due overtime pursuant to its terms.  *See Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1233 (10th Cir. 2008) ("[I]t is the employee's burden to prove that the employer is violating the FLSA."); *see also Tripodi v. Microculture, Inc.*, 397 F. Supp. 2d 1308, 1314 (D. Utah 2005) (stating the employee has the burden of establishing "that he is entitled to unpaid overtime compensation").  Requiring Plaintiffs to show they are covered by the small vehicle exception adheres to this standard because the exception ultimately places Plaintiffs back within the scope of the FLSA, notwithstanding the MCA exception.  *See Carley*, 890 F.3d at 579-80.

Furthermore, the TCA is widely known as an "exception" to the MCA.  *See, e.g.*, *Gowey*, 520 F. Supp. 3d at 1019.  Both the United States Supreme Court and the Tenth Circuit recognize "the general rule of statutory construction . . . that the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits."  *EnergySolutions, LLC v. Utah*, 625 F.3d 1261, 1274 (10th Cir. 2010) (quoting *NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 711 (2001)).  The same is true for the small vehicle exception.  The burden remains with the one seeking protection of the exception, which is Plaintiffs in the present case.

Plaintiffs cannot meet their burden to show the small vehicle exception applies.  Rather, the overwhelming evidence in the record shows that Plaintiffs were drivers of vehicles with a GVWR of more than 10,000 pounds.  OSUMF ¶¶ 71-86.

4673607.4

Plaintiffs rely on a truck list from *Wilkinson v. High Plains, Inc.*, 297 F. Supp. 3d 988 (D.N.D. 2018). *See* SUMF ¶ 54. But—as Plaintiffs should know from discovery ***in this case***—the *Wilkinson* truck list does not show a complete or accurate picture of MBI's actual vehicle weights.[10]

A review of the actual evidence in this case indisputably establishes that at least 16 Plaintiffs were assigned vehicles with a GVWR of more than 10,000 pounds. OSUMF ¶¶ 71-86. MBI has produced to Plaintiffs, and presented here, photographs of VIN stickers, reflecting information such as the make, model, VIN number, and GVWR of the relevant vehicles. *Id.* The precise vehicle data from those VIN stickers is reflected in the data that MBI produced to Plaintiffs in *this case*. *See* Pls.' Ex. 32.

In their brief, Plaintiffs included excerpts from the truck list that MBI produced in this case. Conveniently, however, Plaintiffs excluded the GVWR data from those excerpts. Had Plaintiffs included that data, it would have been plain that Plaintiffs were assigned vehicles with a GVWR more than 10,000 pounds. For example, for the truck assigned to Tim Warren, Plaintiffs provided the Court the following excerpt:

| 1FT8W3BT6EEA38479 | Shop-FlatBed | 7633P |
|---|---|---|

Pls.' Br., at 17. But the full row of data for Warren's assigned vehicle reflects a GVWR of 11,500 pounds:

---

[10] For whatever reason, the *Wilkinson* list often simply lists GVWR of 10,000, to represent that the weight *exceeds* (not equals) 10,000 pounds. *See* Pls.' Ex. 31. As explained here, the VIN stickers and the truck list produced *in this case* show the actual GVWR for the vehicles at issue.

| 2014 Ford F350 Crew Cab | 11,500 | 69c | P714 | | 1FT8W3BT6EEA38479 | Shop-FlatBed | 7633P |
|---|---|---|---|---|---|---|---|

Pls.' Ex. 32, at 3.

Whatever Plaintiffs' intent in omitting the relevant information for the Court, MBI has compiled its own data summary, from all the evidence, for each truck identified as being assigned to a plaintiff for the Court's review. This summary is available at Defendants' Exhibit 8.

Plaintiffs admit that they were assigned trucks and drove such assigned trucks. SUMF ¶¶ 20, 55. The GVWR of these assigned trucks forecloses application of the small vehicle exception to these Plaintiffs, OSUMF ¶¶ 70-68, and their request for summary judgment should be denied.

Plaintiffs argue the small vehicle exception may nonetheless apply because they occasionally drove "spare" trucks and because MBI records show a "mixed fleet" wherein some vehicles have a GVWR below 10,000 pounds. Even assuming MBI has a "mixed fleet," Plaintiffs have not shown the small vehicle exception applies, particularly where so many Plaintiffs were assigned vehicles with a GVWR above 10,000 pounds. *See, e.g.*, *Hill v. B. Frank Joy, LLC*, 2016 WL 4194189, at *4-5 (D. Md. Aug. 9, 2016) (rejecting TCA application for a plaintiff who might have had to drive a smaller vehicle "at some point").

"Courts that have considered the issue of a mixed fleet are somewhat divided on the proper approach, but the prevailing view is that the [MCA] exemption should apply so long as the time an employee spends operating commercial motor vehicles [(vehicles in excess of 10,000 pounds)] is more than de minim[i]s." *Avery v. Chariots For Hire*, 748 F. Supp. 2d 492,

500 (D. Md. 2010) (collecting cases).  The Court should adopt this prevailing view, which is consistent with the MCA, TCA, and corresponding regulations.  *See id.*  Here, Plaintiffs spent more than a de minimis amount of time in their assigned vehicles.  SUMF ¶¶ 20, 55; OSUMF ¶¶ 71-86.  Thus, the small vehicle exception cannot apply.

Plaintiffs, however, argue that they need only show they spent a de minimis amount of time operating smaller vehicles for the exception to apply.  In support, they suggest they used "spare trucks" that supposedly could have had a GVWR below 10,000 pounds given the alleged mixed fleet.  Yet, Plaintiffs do not identify *how much* time they spent using such spare trucks.  This Court has previously rejected "the unsupported proposition that an employee falls within the 'small vehicle' exception whenever his employer operates a 'mixed fleet' of small and large vehicles and the employee may be called on to drive a small vehicle during his employment."  *Nelson*, 2019 WL 1437765, at *3.  That same rationale applies here.

Plaintiffs spent more than a de minimis amount of time operating vehicles with a GVWR above 10,000 pounds.  OSUMF ¶¶ 71-86.  Plaintiffs have not shown they spent even a de minimis amount of time operating "small vehicles."  Thus, the small vehicle exception cannot apply, and summary judgment must be denied as to the MCA exception.  *Accord Jaramillo v. Garda, Inc.*, No. 12 C 662, 2012 WL 4955932, at *5 (N.D. Ill. Oct. 17, 2012) (finding the TCA inapplicable where Plaintiffs drove large trucks more than 80 percent of the time); *Dalton v. Sabo, Inc.*, No. 09-358-AA, 2010 WL 1325613, at *4-5 (D. Or. April 1, 2010).

It is worth noting that it appears a few (three) of the Plaintiffs may have been assigned vehicles with a GVWR below 10,000 pounds at some point.  These Plaintiffs are outliers.  They

merely show that this matter is not susceptible to class-wide resolution, which is an argument for another day and motion. *See Rojas v. Garda CL SE, Inc.*, 2015 WL 5084135, at *6 (S.D. Fla. Aug. 28, 2015) (finding inappropriate for collective action the highly individualized inquiry into the amount of small vehicle use).

## II.   Summary judgment is inappropriate on MBI's good faith defense.

There was no violation of the FLSA in this case. At a minimum, fact disputes exist regarding the exemptions outlined above. However, if this Court were to find a violation of the FLSA, the Court should not award liquidated damages because MBI acted with subjective good faith and objective reasonableness.

If an employer can establish that his conduct "was in good faith and that he had reasonable grounds for believing that [his conduct] was not in violation" of the FLSA, a court may decline to award liquidated damages. 29 U.S.C. § 260. Here, MBI relied on advice of attorneys in classifying the Wireline Engineers. SUMF ¶¶ 59, 61. The Tenth Circuit has recognized such reliance is "particularly persuasive" for findings on a good-faith defense. *Pabst v. Okla. Gas & Elec. Co.*, 228 F.3d 1128, 1136-37 (10th Cir. 2000); *see also Ellison v. GAB Robins, Inc.*, No. CIV 02-127, 2006 WL 8444544, at *3 (D.N.M. Jan. 26, 2006) ("[A]n employer establishes a good faith defense to liquidated damages by diligently consulting legal specialists and labor specialists and following their advice." (citations omitted)).

Plaintiffs point to the *Wilkinson* decision in support of its motion. Frankly, that decision is irrelevant. That case dealt with operators. The Plaintiffs here *supervised* those operators

16

and had different job functions.  Thus, Plaintiffs are covered by different exemptions. Summary judgment should be denied.

## CONCLUSION

At a minimum, genuine issues of a material fact exist regarding whether Plaintiffs were exempt from the FLSA overtime compensation requirements and whether MBI acted in good faith in classifying Plaintiffs as exempt.  Thus, MBI respectfully requests this Court deny Plaintiffs' partial motion for summary judgment.

Respectfully submitted this 18th day of February, 2022.

**Vogel Law Firm**

*s/Robert B. Stock*
Robert B. Stock (ND #05919)
218 NP Avenue
P.O. Box 1389
Fargo, ND 58107-1389
Telephone:  701-237-6983
RBSLitGroup@vogellaw.com

**Hall & Evans, LLC**

Lance G. Eberhart
1001 Seventeenth Street, Suite 300
Denver, CO 80202
Telephone: (303) 628-3300
Facsimile: (303) 628-3368
eberhartl@hallevans.com

*Attorneys for Defendants*

4673607.4

## <u>CERTIFICATE OF SERVICE  (CM/ECF)</u>

   I hereby certify that on this 18th day of February, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Richard J. (Rex) Burch
Bruckner Burch PLLC
8 Greenway Plaza #1500
Houston, TX 77046
713-877-8788
rburch@brucknerburch.com

Joseph A. Fitapelli
Armando A. Ortiz
28 Liberty Street, 30th Floor
New York, NY 10005
212-300-0375
jfitapelli@fslawfirm.com
aortiz@fslawfirm.com

           *s/ Donna J. Hestbeck, assistant to*
           Robert B. Stock (ND #05919)
           218 NP Avenue
           P.O. Box 1389
           Fargo, ND 58107-1389
           Telephone:  701-237-6983
           RBSLitGroup@vogellaw.com
           *Attorney for Defendants*

4673607.4